EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>    Yamil Suárez Marchán | 2003 TSPR 115<br><br>159 DPR |
| --- | --- |

Número del Caso: AD-2001-8

Fecha: 30 de junio de 2003

Oficina de Administración de los Tribunales:

                        Lcda. Lyntha A. Figueroa Rivera
                        Lcdo. Alcides Oquendo Solís
                        Oficina de Asuntos Legales

Abogado de la Parte Querellada:

                        Lcdo. René Arrillaga Beléndez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Yamil Suárez Marchán

AD-2001-8

PER CURIAM

San Juan, Puerto Rico a 30 de junio de 2003

El Lcdo. Yamil Suárez Marchán juramentó como Juez Superior del Tribunal de Primera Instancia el 20 de julio de 1989. Desde entonces ejerció su cargo en varias regiones judiciales. Al momento en que ocurrieron los hechos que originaron la querella de autos, el licenciado Suárez Marchán se desempeñaba como Juez Superior en la Sala de Relaciones de Familia del Centro Judicial de Aguadilla. Su nombramiento venció el 19 de julio de 2001, sin embargo, continuó ocupando el cargo hasta el 13 de noviembre de 2001, cuando cesó sus funciones al no ser renominado para un nuevo término.

I

La querella de epígrafe tiene su origen en el caso *Pueblo v. José Ramos Olivencia*, Criminal Núm. I LE 2000G0399, por infracción al Art. 3.3 de la Ley de Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989, 8 L.P.R.A. § 633. Según surge de los autos del caso, la representación legal del imputado se comunicó mediante carta en dos (2) ocasiones con el Juez Administrador Regional de Aguadilla sobre una situación relacionada con su cliente y el entonces Juez Suárez Marchán.

En la primera de las mencionadas comunicaciones, fechada 16 de octubre de 2000, la representación legal del señor Ramos Olivencia solicitó el traslado a otra región judicial de una acción sobre división de comunidad de bienes en la que éste era la parte demandada, *Lourdes Noemí Cruz Negrón v. José A. Ramos Olivencia*, Civil Núm. I AC 2000-0506, y de un caso criminal en el que era acusado. En la segunda comunicación, fechada 21 de mayo de 2001, la representación legal del señor Ramos Olivencia solicitó el traslado de una acusación en su contra pendiente ante en el Tribunal de Primera Instancia de Aguadilla por infringir el Art. 105 del Código Penal, 33 L.P.R.A. §

4067, donde la perjudicada era la hija de su ex compañera consensual, la Sra. Lourdes Noemí Cruz Negrón. *Pueblo v. José Ramos Olivencia*, AI1VP2001-01638. Fundamentó ambas peticiones en que la señora Cruz Negrón sostenía una relación amorosa con el entonces Juez Suárez Marchán.

Las mencionadas comunicaciones fueron referidas a la Directora Administrativa de los Tribunales, Lcda. Mercedes Marrero de Bauermeister. El 13 de julio de 2001 el señor Ramos Olivencia compareció a la Oficina de Asuntos Legales de la Administración de Tribunales (en adelante O.A.T.), donde radicó una queja contra el entonces Juez Suárez Marchán. Finalizada la investigación, el 27 de septiembre de 2001, la O.A.T. rindió el correspondiente Informe de Investigación a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico (en adelante la Comisión). El 15 de octubre de 2001 el Comisionado Wilfredo Alicea López determinó causa probable para iniciar el procedimiento disciplinario.

Así las cosas, el 17 de enero de 2002 se radicó una querella contra el licenciado Suárez Marchán donde se le imputaron siete (7) cargos por infracciones a los Cánones I, IV, IX, XI, XII, XV, XXI, XXIV y XXVI de Ética Judicial, 4 L.P.R.A. Ap. IV-A. Además, se le

imputó haber actuado en contravención a los Cánones 11, 13, 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX, y al Art. 153 del Código Penal que tipifica el delito de amenaza. 33 L.P.R.A. § 4194. El querellado compareció ante la Comisión negando los cargos imputados y solicitando la desestimación de la querella por advenir académica toda vez que había cesado en sus funciones como Juez.

Luego de celebrar la vista evidenciaria correspondiente, la Comisión nos remitió su Informe. De acuerdo con las determinaciones de hecho formuladas en éste, la señora Cruz Negrón, tasadora de bienes raíces, conoció al señor Ramos Olivencia para el año 1995 en ocasión de que fue a solicitarle empleo. Luego de algún tiempo trabajando juntos, iniciaron una relación amorosa a escondidas ya que ambos eran casados. Entre finales de 1997 y principios de 1998 comenzaron a convivir hasta el 3 de agosto de 2000. La pareja estableció una empresa dedicada a ofrecer servicios de tasación. Dicha empresa estaba localizada en el primer nivel de su residencia.[1] Ambos conocieron al entonces Juez Suárez Marchán a principios de 1998, cuando tasaron un inmueble

---

[1] En la residencia vivían, además, los dos (2) hijos menores de edad de la señora Cruz Negrón, Giselle Espada Negrón de trece (13) años y Héctor Emanuel Espada Negrón de once (11) años. Ambos menores fueron procreados en un matrimonio anterior con el Sr. Héctor Iván Espada Colón.

propiedad de éste.  Desde que se conocieron entre los tres (3) surgió una relación de amistad.

En mayo o junio de 1998 la señora Cruz Negrón y el señor Ramos Olivencia sostuvieron una discusión en su oficina.  La señora Cruz Negrón acudió al Cuartel de la Policía con el propósito de radicar una denuncia contra su compañero por violación a la Ley Núm. 54, 8 L.P.R.A. §§ 601 *et seq*.  A solicitud de ésta, el entonces Juez Suárez Marchán acudió al Cuartel para dialogar con la pareja y tranquilizarlos.  Luego de la intervención del querellado, la señora Cruz Negrón desistió de denunciar a su compañero.

De las determinaciones de hecho del Informe de la Comisión surge, además, que al querellado, el entonces Juez Suárez Marchán, le fue asignada una acción de alimentos que instó la señora Cruz Negrón contra su ex cónyuge, el Sr. Héctor Iván Espada Colón.  En síntesis, sus intervenciones fueron a los efectos de aceptar las recomendaciones de la Oficial Examinadora y aceptar la representación legal del señor Espada Colón.[2] Finalmente, las partes sometieron una estipulación sobre la pensión alimentaria que fue acogida por el Hon. Manuel A. Acevedo Hernández.

La relación entre el querellante, la señora Cruz Negrón y el entonces Juez Suárez Marchán continuó cuando

---

[2]    Dichas intervenciones se llevaron a cabo los días 7 y 23 de febrero y 12 de julio de 2000.

este último contrató a la entonces pareja para que llevaran a cabo la tasación de un inmueble. En esta ocasión el trabajo estuvo a cargo exclusivamente de la señora Cruz Negrón y los servicios fueron prestados de forma gratuita. Luego de sostener una discusión con el señor Ramos Olivencia, la señora Cruz Negrón abandonó su residencia el 3 de agosto de 2000. Regresó dos (2) días después y en esta ocasión fue el señor Ramos Olivencia quien se marchó a otro lugar.

Entre el 5 y el 15 de agosto de 2000 se suscitaron varios incidentes entre la pareja ya que el señor Ramos Olivencia le solicitaba insistentemente a la señora Cruz Negrón que continuaran su relación sentimental y ésta se negaba. Ante las múltiples llamadas telefónicas que recibió la señora Cruz Negrón por parte del señor Ramos Olivencia, decidió llamar a la Policía. Ésta informó al agente encargado de la investigación que se sentía atemorizada ya que alegadamente su compañero había amenazado de muerte a ella y a sus hijos. Además, informó que su hija quería declarar sobre unos actos lascivos que el señor Ramos Olivencia había cometido contra ella en 1998.

El 16 de agosto de 2000 se celebró la vista de causa probable para arresto por infracciones a la Ley Núm. 54, *supra*. El señor Ramos Olivencia estuvo representado en dicha vista por el Lcdo. José M. Cruz Ellis, por

recomendación del entonces Juez Suárez Marchán.[3] Con relación a los alegados actos lascivos cometidos por el señor Ramos Olivencia, la Fiscalía de Aguadilla radicó la denuncia correspondiente el 26 de abril de 2001. A solicitud de la representación legal del acusado, ambos casos fueron trasladados a la Sala de Mayagüez.[4]

El 19 de agosto de 2000 la señora Cruz Negrón se mudó junto a sus hijos a una residencia propiedad del entonces Juez Suárez Marchán. Acordaron que ésta arrendaría la propiedad, aunque no pactaron un canon. El querellado se mudó entonces a la residencia de un amigo. Ante la ruptura sentimental y profesional entre la señora Cruz Negrón y el señor Ramos Olivencia, ésta inició una nueva empresa de tasaciones en el primer nivel de la residencia del entonces Juez Suárez Marchán. Luego de la separación, la señora Cruz Negrón instó una demanda de división de la comunidad de bienes existente entre ella y el señor Ramos Olivencia. En esta acción,

---

[3] El entonces Juez Suárez Marchán también le recomendó al Lcdo. Carlos Lorenzo y a la Lcda. Esther Moreno.

[4] Cabe señalar que el señor Ramos Olivencia resultó absuelto de la acusación por haber infringido la Ley Núm. 54, *supra*, y que al momento de la radicación del Informe de la Comisión, aún se encontraba pendiente la acusación por actos lascivos.

por recomendación del entonces Juez Suárez Marchán, estuvo representada por el Lcdo. Luis Roberto Santos.[5]

Para principios de septiembre de 2000 el querellado inició una relación sentimental con la señora Cruz Negrón. Posteriormente el entonces Juez Suárez Marchán se quejó ante el Fiscal de Distrito de Aguadilla, Lcdo. Luis A. Pérez Cabán, ya que alegadamente el señor Ramos Olivencia lo estaba persiguiendo y había comentado sus intenciones de ocasionarle daño corporal. El Fiscal citó al señor Ramos Olivencia, al entonces Juez Suárez Marchán y a la señora Cruz Negrón con el propósito llegar a algún acuerdo entre ellos. Durante la reunión el querellado exhibió una conducta hostil y en tono enérgico manifestó al señor Ramos Olivencia: "[t]engo información de que estás cometiendo delitos contra mi persona; que estás haciendo amenazas de muerte.... Y te quiero decir lo siguiente, yo no soy una mujer indefensa. Conmigo no te metas." Declaración jurada del Lcdo. Yamil Suárez Marchán, 27 de agosto de 2001, pág. 19. En vista de que el Fiscal no pudo lograr un acuerdo entre las partes, refirió el asunto para que se llevara a cabo una investigación policial. Sin embargo, nunca se radicó una querella contra el señor Ramos Olivencia por las alegadas amenazas.

---

[5]  El entonces Juez Suárez Marchán, además, le recomendó los servicios de los licenciados Manuel Biaggi Junquera y Edwin Miranda.

Luego de iniciada la relación sentimental entre el querellado y la señora Cruz Negrón, el periódico El Nuevo Día publicó, el 22 de julio de 2001, tres (3) artículos en los que dio a conocer la historia de ésta y de sus hijos.  En dos (2) de ellos, la señora Cruz Negrón relató la historia de rehabilitación de su hijo Héctor Emanuel Espada Negrón, quien padece de impedimentos físicos.  Además, hizo referencia a los actos de violencia doméstica de los que fue víctima y mencionó que su hija había sido atacada sexualmente.  En el tercer artículo el entonces Juez Suárez Marchán relató sus experiencias como Juez de Relaciones de Familia en casos de remoción de los menores del hogar de los progenitores.  El entonces Juez Suárez Marchán estuvo presente durante las entrevistas y, además, aparecieron publicadas varias fotografías de éste junto a los menores.

El Informe de la Comisión incluyó, además, entre la alegada conducta impropia del entonces Juez Suárez Marchán un incidente entre éste y la Lcda. Nilsa L. García Cabrera, quien tenía a su cargo la investigación que llevó a cabo la O.A.T.  De acuerdo con las determinaciones de hecho de la Comisión, el entonces Juez Suárez Marchán, en tono de voz alto y desafiante, increpó a la licenciada García Cabrera sobre el estado del procedimiento disciplinario en su contra.  Alegó que

le urgía la culminación de su caso ya que se encontraba tramitando su renominación como Juez Superior.

Luego de recibir la evidencia presentada en la vista en su fondo, la Comisión encontró al querellado incurso en violaciones a los Cánones I, IV, IX, XI, XII, XV, XXIII, y XXIV de Ética Judicial, *supra*. Además, determinó que, analizada la totalidad de los hechos de forma conjunta, la conducta del querellado refleja que éste infringió el Canon 38 de Ética Profesional, *supra*. Por otro lado, la Comisión resolvió que no hubo infracción al Art. 153 del Código Penal, *supra*, ni al Canon 35 de Ética Profesional, *supra*. Considerando que al momento de la vista en su fondo el querellado no era Juez, recomendó como sanción una fuerte censura.

El licenciado Suárez Marchán presentó una moción de reconsideración el 14 de marzo de 2003, donde solicitó que se eliminara el testimonio del señor Ramos Olivencia por tener una conducta agresiva y ser un hombre maltratante. Además, solicitó que se eliminaran las imputaciones en su contra por el incidente ocurrido con la licenciada Cabrera García. Adujo que la conducta del querellado fue razonable debido a que le preocupaba su renominación como Juez. Mediante Resolución de 15 de abril de 2003 la Comisión declaró no ha lugar la moción de reconsideración y nos remitió el Informe. Con el beneficio de dicho Informe y de la prueba que consta en autos, procedemos a resolver.

II

Para determinar el curso decisorio en el caso de marras es necesario acudir a la Regla 37 para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces o Juezas del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XV-A, que establece en lo pertinente:

> La presentación por el juez o la jueza de la renuncia al cargo o la expiración del término de un nombramiento no impedirá que continúe el procedimiento disciplinario en su contra a los efectos de determinar si la conducta imputada amerita la recomendación de que se impongan medidas disciplinarias contra el querellado como abogado o abogada.

En *In re: Lugo Rodríguez I*, res. el 15 de octubre de 1999, 149 D.P.R. _____, (1999), 99 T.S.P.R. 157, 99 J.T.S. 163, tuvimos la oportunidad de interpretar la citada Regla. Señalamos que el hecho de que un miembro de la Judicatura cese en sus funciones, ya sea por renuncia o por haber vencido el término de su designación, no impide que continúe un procedimiento disciplinario en su contra, siempre que la conducta imputada pueda dar lugar a su desaforo o suspensión del ejercicio de la abogacía. Por otro lado, en *In re: Liceaga*, 82 D.P.R. 252, 257 (1961), resolvimos que la conducta impropia o inmoral de un juez o jueza puede tener como consecuencia su desaforo o suspensión como abogado aun cuando al momento de iniciarse el

procedimiento disciplinario haya cesado en sus funciones como magistrado.

El querellado de autos cesó en sus funciones como Juez Superior el 13 de noviembre de 2001 ya que no fue renominado para un nuevo término. Sin embargo, a la luz de la citada Regla 37, *supra*, y de nuestras decisiones previas, tal circunstancia no es óbice para que ejerzamos nuestro poder inherente para disciplinar al licenciado Suárez Marchán en caso de que su conducta como Juez haya infringido los Cánones de Ética Judicial y que dichas actuaciones también sean violatorias de los Cánones de Ética Profesional. A la luz de lo anterior, resulta improcedente el argumento del querellado a los efectos que debe desestimarse la presente querella ya que la conducta imputada tuvo lugar mientras se desempeñaba como Juez. Determinar lo contrario atentaría contra el propósito social de la Regla 37, de evitar que la justicia se vea frustrada tornando una querella en académica por el hecho de un juez o jueza cese en su cargo, y sería incompatible con nuestra facultad inherente para reglamentar el ejercicio de la abogacía. *In re: Campoamor Redín*, res. el 24 de enero de 2000, 150 D.P.R. _____ (2000), 2000 T.S.P.R. 25, 2000 J.T.S. 32.

De acuerdo con el Informe de la Comisión, el querellado incurrió en conducta contraria a los Cánones I, IV, IX, XI, XII, XV, XXIII, y XXIV de Ética Judicial,

*supra*. El Canon I,[6] *supra*, es un precepto amplio que consagra el objetivo principal de este cuerpo de normas al establecer que los tribunales y, por ende, las personas encargadas de la alta encomienda de ser magistrados o magistradas, tienen el deber de mantener la fe del Pueblo en la justicia. A tales efectos requiere de todos los jueces y juezas imparcialidad, honestidad e integridad tanto en su vida pública como privada. *In re: Hon. Nilda Cruz Aponte*, res. el 7 de abril de 2003, 159 D.P.R. _____ (2003), 2003 T.S.P.R. 51, 2003 J.T.S. 52.

Por su parte, el Canon IV,[7] *supra*, continúa particularizando las normas sobre el proceder de los

---

[6]   El Canon I, *supra*, establece:

La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

[7]   La citada norma reza:

Los Jueces y las Juezas deben mantener las mejores relaciones y cooperar entre sí para lograr la más eficiente administración de la justicia. Su conducta debe enmarcarse en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones relativas dentro

jueces y juezas. A tenor de dicho precepto éstos deben mantener entre sus compañeros relaciones de respeto mutuo y de cooperación para lograr la más eficiente administración de la justicia. Además, deben abstenerse de criticar infundada e innecesariamente a sus compañeros de la Judicatura. El Canon IX, *supra*, prescribe que los jueces y juezas "[d]eberá[n] abstenerse de hacer recomendaciones sobre abogadas o abogados específicos que deban utilizarse con respecto a controversias entre ciudadanos o ciudadanas o asuntos profesionales en general". Esta prohibición se fundamenta en que los magistrados y magistradas, como árbitros imparciales, deben evitar dar la impresión de que confían más en el criterio de un abogado que en el de otro, independientemente de que se trate de un asunto en el que dicho juez o jueza no intervendrá directamente. Rafael J. Torres Torres, *Cánones de Ética Judicial, Comentarios*, Forum, 1-3, octubre, 1993, pág. 14.

---

del sistema judicial. Se cuidarán de hacer críticas infundadas o innecesarias que tiendan a menospreciar el prestigio de sus compañeros Jueces o compañeras Juezas. Velarán por que la conducta de éstos y éstas se ajuste a estos cánones tanto en su proceder personal como en el desempeño de las funciones judiciales. El Juez o la Jueza debe promover los procedimientos disciplinarios que procedan contra cualquier Juez o Jueza, abogado o abogada que actúe impropia o deshonrosamente, cuando así le conste personalmente.

De acuerdo con el Canon XI,[8] *supra*, el juez o jueza no únicamente debe ser imparcial, sino que es preciso que su conducta excluya toda posible apariencia de que su actuación obedece a motivaciones impropias. Cónsono con el recién citado precepto, el Canon XII,[9] *supra*,

---

[8]    El Canon XI, *supra*, dispone en lo pertinente:

La Jueza o el Juez no solamente ha de ser imparcial sino que su conducta ha de excluir toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos, o de ser influido por el clamor de influencias de personas, grupos o partidos, o de ser influido por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. Ha de tener siempre presente que su único empeño debe ser el de impartir justicia de conformidad con el Derecho aplicable, con absoluta ecuanimidad, y sin preocuparle el reconocimiento que pueda darse a su labor, ni la crítica injusta.

[9]    En lo pertinente, de acuerdo con el citado Canon:

La Jueza o el Juez no debe entender en procedimiento judicial alguno en que la ley le prohiba [sic] actuar, incluyendo, pero sin limitarse a cualesquiera de los cargos siguientes:

(a)  Por tener prejuicio o parcialidad hacia cualesquiera de las personas, los abogados o las abogadas que intervengan en el pleito o por haber prejuzgado el caso.

(b)  Por estar directa o indirectamente interesado en el resultado del caso.

.  .  .  .

(g)  Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

enumera las instancias en las que un juez o jueza debe inhibirse en un asunto. En síntesis, se prohíbe que entienda en un procedimiento judicial cuando tenga algún prejuicio o parcialidad para adjudicar o cuando exista una causa que arroje dudas sobre su imparcialidad. Además, les impone a los jueces y juezas la obligación de notificar su inhibición tan pronto conozcan de la causa que los inhabilite para entender en el asunto mediante resolución escrita donde hagan constar dicha causa, con notificación de la misma a todas las partes.

Por otro lado, el Canon XV,[10] *supra*, prohíbe a los jueces y juezas entrevistarse en privado con las partes o sus abogados. Esta norma promueve que los miembros de la Judicatura mantengan una imagen de imparcialidad ya que un simple acercamiento puede tener como consecuencia que la parte perdidosa en el litigio justifique el triunfo de la parte contraria en la parcialidad del magistrado o magistrada. Torres Torres, *supra*, en la pág. 20. En aras de evitar el ejercicio indebido de la

---

[10]    El Canon XV, *supra*, dispone:

El Juez o la Jueza no debe celebrar entrevistas privadas con las partes o sus abogados, ni permitir comunicaciones o argumentos de los mismos que pretendan influir su actuación judicial en asuntos de competencia o bajo su consideración cuando los otros intereses que puedan ser afectados no estén representados ante él o ella, excepto en casos no contenciosos en los que deberá ser muy cauteloso o cautelosa.

autoridad judicial, el Canon XXIII,[11] *supra*, señala que los jueces y juezas deben evitar cualquier actuación que pueda dar la impresión de que está ejerciendo influencia indebida en otro juez o jueza en relación con algún asunto pendiente. Como hemos señalado anteriormente, el mencionado principio ético "[p]arte de la premisa de que en nuestra sociedad el cargo de juez es un cargo especial que proyecta una visión y noción pública destacada, de prestigio e influencia". *In re: Comunicación del Hon. Juez Pérez Jiménez*, 112 D.P.R. 683, 685 (1982).

Finalmente, el Canon XXIV, *supra*, reconoce que los jueces y juezas no sólo se desenvuelven en el ámbito de sus funciones, sino en su entorno social y, por tanto, no es deseable que vivan aislados de esa realidad. No obstante, les impone la obligación de "ser escrupuloso[s] en evitar actuaciones que razonablemente puedan dar lugar a la impresión de que sus relaciones

---

[11] El citado Canon reza, en lo pertinente:

El Juez o la Jueza debe evitar toda conducta o actuación que pueda dar base a la creencia de que ejerce o pretende ejercer influencia indebida en el ánimo de otro Juez o Jueza en la consideración de un caso pendiente o futuro. **El Juez o Jueza no debe influir ni directa ni indirectamente, para conseguir colocarse en mejor situación que cualquier otro ciudadano o ciudadana en el litigio de sus causas personales.**

El Juez o la Jueza no debe dar la impresión ni permitir que otros den la impresión al efecto de que éstos pueden tener alguna influencia sobre aquél o aquélla. (Énfasis suplido.)

sociales, de negocios, de familia o de amistad influyen en alguna forma en sus determinaciones judiciales". Reiteramos que las máximas citadas constituyen únicamente las obligaciones más elementales que deben cumplir los encargados de administrar justicia. *In re: Ferrán Quintana*, res. el 28 de junio de 2002, 157 D.P.R. _____ (2002), 2002 T.S.P.R. 93, 2002 J.T.S. 92. Lo anterior:

> Ha de ser así porque el juez, como tal, es el árbitro designado por la sociedad, a través del Estado, para juzgar la conducta humana. Y para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones, ha de ser, y ser visto, como un ser humano sin tacha. Ello exige, no solamente ser bueno, sino también parecerlo. Carlos J. Irizarry Yunqué, *La ética judicial*, Forum, 1993, pág. 4.

Examinemos la conducta del licenciado Suárez Marchán mientras se desempeñaba como Juez Superior para determinar si infringió alguno de los principios éticos previamente expuestos y si ello, a su vez, constituye violación a los Cánones de Ética Profesional.

III

Reiteradamente hemos señalado que no habremos de alterar las determinaciones de hecho de la Comisión, salvo en aquellos casos donde se demuestre parcialidad, prejuicio o error manifiesto. Sin embargo, no estamos obligados a acoger en su totalidad el informe remitido

por la Comisión. *In re: Maldonado Torres*, res. el 20 de diciembre de 2000, 151 D.P.R. \_\_\_\_\_ (2000), 2000 T.S.P.R. 90, 2000 J.T.S. 97; *In re: Moreira Avilés*, 147 D.P.R. 78, 86 (1998); *In re: Soto López*, 135 D.P.R. 642, 646 (1994). Un examen minucioso y objetivo del Informe y de la prueba documental y testifical que consta en autos, nos convence de que no existe razón para intervenir con las determinaciones de hecho de la Comisión.

La conducta del querellado de marras mientras se desempeñó como Juez Superior se apartó de la prudencia, serenidad, imparcialidad y cuidado que deben exhibir los miembros de la Judicatura tanto en su vida personal como en el ejercicio de sus funciones. En primer lugar, el licenciado Suárez Marchán actuó indebidamente al intervenir en la reclamación de alimentos entre la señora Cruz Negrón y su ex cónyuge, el señor Espada Colón. La prueba que consta en el expediente demuestra que el querellado intervino para aceptar el informe parcial de la Oficial Examinadora el 7 de febrero de 2000. Además, intervino para aceptar la representación legal del señor Espada Colón el 23 de febrero de 2000. Ese mismo día concedió una prórroga solicitada por la señora Cruz Negrón para contestar un interrogatorio y dio al tribunal por enterado en una moción informativa. El 12 de julio de 2000 autorizó la representación legal adicional solicitada por el señor Espada Colón.

Finalmente, ordenó a las instituciones bancarias de las cuales los señores Cruz Negrón y Ramos Olivencia eran clientes a entregar sus expedientes de crédito, solicitudes de préstamos y estados de cuentas a la representación legal del señor Espada Colón.[12]

Las mencionadas intervenciones del licenciado Suárez Marchán resultan contrarias a los Cánones XI, XII, XV y XIV de Ética Judicial, *supra*. Debido a la relación de amistad existente entre éste, la señora Cruz Negrón y el señor Ramos Olivencia, el querellado debió inhibirse inmediatamente en la reclamación de alimentos, particularmente debido a que el querellado manifestó que desde que conoció a la señora Cruz Negrón le pareció muy guapa, atractiva y siempre "hubo esa química". Aunque sus intervenciones no adjudicaron la reclamación en sus méritos, **los jueces y juezas están llamados a evitar incluso la mera apariencia de que su conducta está parcializada a favor de una parte por consideraciones de amistad, parentesco o algún interés personal.** Los magistrados y magistradas se convierten en depositarios de la confianza del Pueblo en que la administración de la justicia se llevará a cabo por personas de una conducta intachable. *In re: Robles Sanabria*, res. el 22 de junio de 2000, 151 D.P.R. _____ (2000), 2000 T.S.P.R. 94, 2000 T.S.P.R. 106. Esta confianza los obliga a ser

---

[12] Cabe señalar que posteriormente dicha orden fue dejada sin efecto.

cautelosos en las actuaciones y en las impresiones que puedan dar a terceras personas sobre su rectitud e imparcialidad. El proceder del querellado en nada aporta a la exaltación de la Judicatura puertorriqueña, sino que trastoca el prestigio de la Rama Judicial. *In re: Ferrán Quintana*, *supra*.

Por otro lado, durante el tiempo en que el licenciado Suárez Marchán intervino como Juez en la reclamación de alimentos, sostenía comunicación privada con la señora Cruz Negrón, conducta contraria al Canon XV de Ética Judicial, *supra*. Así surge de la propia agenda de la señora Cruz Negrón, donde el día 31 de mayo de 2000 ésta escribió: "hablé con Yamil sobre la moción". La situación contemplada en el Canon XV, *supra*, relacionada a las entrevistas privadas entre una parte y su abogado, reviste particular importancia en casos de ciudadanos que acuden ante el juez o jueza solicitando orientación.

> Si el juez percibe que puede haber una querella en el trasfondo, debe detener la orientación y tomar providencias de inmediato para que se cite a la otra parte. De lo contrario, podría enfrentarse a la situación de que la persona atendida, sin que el juez lo sepa, utilice el nombre de éste o cualquier información que le haya dado para amedrentar a la otra parte. Torres Torres, *supra*, en la pág. 20.

Al ser de conocimiento del querellado que se encontraba ante su consideración un asunto relacionado con la

señora Cruz Negrón, éste no debió aceptar comunicación en privado con ésta.

En segundo lugar, el licenciado Suárez Marchán actuó en contravención a los Cánones XXIII y XIV de Ética Judicial, *supra*, al acudir al Ministerio Fiscal a querellarse contra el señor Ramos Olivencia por amenazas. Con ello dio la impresión de pretender ejercer una influencia indebida en el ánimo del fiscal[13] ya que el trámite ordinario ante una situación de tal naturaleza sería acudir al Cuartel de la Policía para solicitar que se inicie el trámite correspondiente. El querellado **pretendió colocarse en una posición aventajada a la de cualquier ciudadano** al proceder de esta forma, infringiendo el Canon XXIII de Ética Judicial, *supra*. Incluso las manifestaciones que hizo el querellado al señor Ramos Olivencia, a los efectos de que él no se encontraba en un estado de indefensión, dieron la impresión de que pretendía utilizar la autoridad que le confería su cargo para amendrentarlo. Reiteramos que los jueces y juezas deben ser ejemplo de sobriedad, respeto y urbanidad, incluso ante personas irrespetuosas. *In re: Cruz Aponte*, *supra*; *In re: Maldonado Torres*, *supra*.

---

[13] Es menester tomar en consideración que aunque el Canon XXIII, *supra*, prohíbe las influencias indebidas en el ánimo de otros jueces y juezas, los miembros de la Judicatura deben abstenerse de ejercer cualquier ejercicio inapropiado de su autoridad y cualquier influencia indebida en el ánimo o actuación de cualquier funcionario público o de cualquier ciudadano.

De otra parte, al querellado se le imputa promover, autorizar y participar en la publicación de los artículos periodísticos sobre la historia de los hijos de la señora Cruz Negrón. Específicamente, la Comisión determinó que el licenciado Suárez Marchán contravino el Canon I de Ética Judicial, *supra*, al autorizar y participar en la divulgación del abuso sexual del que fue víctima la hija menor de edad de la señora Cruz Negrón. De un examen de la información publicada en los artículos surge que se hizo mención del vínculo matrimonial entre el querellado y la señora Cruz Negrón. La referencia al abuso sexual del que fue víctima la menor fue hecha por su madre en un artículo basado en los incidentes de violencia doméstica entre ésta y el señor Cruz Olivencia, donde expresó que la niña había superado la crisis y que no podía dar más detalles sobre el particular. La información publicada no refleja que el querellado haya provisto detalles sobre la situación de la niña.

Ahora bien, el querellado intervino directamente en un artículo titulado *Indignación que sonroja a la Justicia*,[14] relacionado con la remoción de los menores del hogar de sus progenitores ante denuncias de maltrato. Allí expuso que las madres tienen razón en indignarse cuando creen que les están removiendo a sus hijos de sus hogares injustamente. Además, dijo que en

---

[14] El Nuevo Día, domingo, 22 de julio de 2001.

ocasiones es necesario exponer a la madre a un proceso de modificación de conducta. Del examen de las manifestaciones del licenciado Suárez Marchán no surge que haya comunicado los incidentes de los actos lascivos de los cuales fue víctima la hija menor de edad de la señora Cruz Negrón. Sin embargo, su participación indirecta quedó evidenciada en las fotografías en las que apareció junto a su esposa y los niños en los mencionados artículos.[15]

Nuevamente el licenciado Suárez Marchán no obró conforme al sano juicio que se espera de un miembro de la Judicatura. Al ser de su conocimiento el procedimiento judicial pendiente contra el señor Ramos Olivencia y en atención a su función judicial, resultaba prudente abstenerse de participar de forma alguna en una serie de informes periodísticos que podían aparentar que él estaba interviniendo en virtud de la autoridad de su cargo para adelantar las causas de su esposa y de la hija de ésta. Este proceder es contrario al Canon I de Ética Judicial, *supra*, que impone a los jueces y juezas actuar conforme a la prudencia y respeto que demanda la función que han sido llamados a ejercer en la sociedad. Por la naturaleza de su ministerio, los jueces y juezas deben imponerse "restricciones en cuanto a su conducta que podrían verse extremadamente pesadas por cualquier ciudadano común". Torres Torres, *supra*, en la pág. 7.

---

[15] El querellado aparece en tres (3) fotografías.

La cautela en el proceder de los jueces y juezas incluye aquellas manifestaciones que puedan llevar a cabo sobre los asuntos que se encuentran ante su consideración o sobre **asuntos que de algún modo puedan interferir con la sana administración de los procedimientos judiciales**.

En cuarto lugar, el licenciado Suárez Marchán actuó en contravención al Canon IX de Ética Judicial, *supra*, que prohíbe a los jueces y juezas recomendar abogados. El querellado recomendó al señor Ramos Olivencia los servicios de los licenciados José M. Cruz Ellis, Carlos Lorenzo y a la Lcda. Esther Moreno. Los licenciados Cruz Ellis y Moreno representaron al señor Ramos Olivencia en la denuncia por violación a la Ley Núm. 54, supra. Además, el querellado recomendó a la señora Cruz Negrón a los licenciados Manuel Biaggi Junaquera, Edwin Miranda y Luis Roberto Santos para que la representaran en la acción de división de comunidad que ésta instó contra el señor Ramos Olivencia. La señora Cruz Negrón finalmente contrató los servicios del licenciado Santos. Aunque el querellado no iba a intervenir como juzgador en los litigios antes mencionados, su deber de conservar la imparcialidad le impedía recomendar a los mencionados letrados.

Finalmente, la Comisión determinó que el querellado contravino el Canon IV de Ética Judicial, *supra*, al exhibir una actitud desafiante cuando al encontrarse con la licenciada García Cabrera, investigadora de la

O.A.T., le increpó sobre el estado de la investigación, le preguntó los nombres de los testigos que había interrogado y le indicó los nombres de otros testigos a los que debía citar.  De acuerdo con la licenciada García Cabrera, el licenciado Suárez Marchán no se identificó con ella ya que ésta aún no lo conocía personalmente, sino que comenzó a cuestionarle sobre la investigación que estaba llevando a cabo de forma abrupta, en un tono de voz alto y en una actitud hostil. Ésta trató de hacer que disminuyera su tono de voz, pero no lo consiguió.  Tales actuaciones ocurrieron en uno de los pasillos del Centro Judicial de Aguadilla frente a varios empleados del tribunal, según declaró la licenciada García Cabrera.  Ésta manifestó que percibió la conducta del querellado como una irrespetuosa y como un intento de intimidarla como funcionaria judicial.

El Canon IV, *supra*, señala que los jueces y juezas deben mantener relaciones de cordialidad, respeto y cooperación sin importar las diferencias en las posiciones que ocupen sus compañeros en el sistema judicial.  La aplicación del referido precepto no debe limitarse exclusivamente a la cooperación entre los compañeros jueces y juezas, sino que se extiende a todos los funcionarios de la Rama Judicial, como lo es en el caso de marras la licenciada García Cabrera.  Una interpretación contraria permitiría las exacerbaciones innecesarias de los miembros de la Judicatura contra

funcionarios judiciales que no ostenten el cargo de jueces y juezas y propiciaría actuaciones contrarias al temperamento judicial que se espera de quienes administran la justicia.

Aunque el licenciado Suárez Marchán violó en repetidas ocasiones los Cánones de Ética Judicial, estamos impedidos de sancionarlo a la luz de dicho cuerpo de normas debido a que ya no forma parte de la Judicatura. Sin embargo, como indicamos previamente, corresponde examinar su conducta a la luz de los Cánones de Ética Profesional, *supra*.

En lo pertinente, el Canon 38, *supra*, dispone:

El abogado deberá esforzarse, al máximo de su capacidad, en la **exaltación del honor y dignidad de su profesión**, aunque el así hacerlo conlleve sacrificios personales y debe **evitar hasta la apariencia de conducta profesional impropia.** En su conducta como funcionario del tribunal, deberá interesarse en hacer su **propia y cabal aportación hacia la consecución de una mejor administración de la justicia.** (Énfasis suplido.)

La conducta del licenciado Suárez Marchán dista mucho de una que propenda a la exaltación del honor de la profesión legal. Por el contrario, sus actuaciones en todo tiempo aparentaron estar encaminadas a beneficiar, desde su posición como Juez Superior, a la señora Cruz Negrón y de utilizar su cargo para alterar el adecuado funcionamiento del sistema judicial. Los abogados y abogadas deben evitar incluso la mera apariencia de impropiedad ya que ésta puede ser detrimental a la

confianza en las instituciones de justicia y en los miembros de la profesión legal. *In re: Morell Corrada*, res. el 5 de marzo de 2003, 158 D.P.R. _____ (2003), 2003 T.S.P.R. 34, 2003 J.T.S. 35; *In re: Ortiz Brunet*, res. el 22 de noviembre de 2000, 155 D.P.R. _____ (2000), 2000 T.S.P.R. 70, 2000 J.T.S. 134.

En *In re: Lugo Rodríguez II*, res. el 19 de septiembre de 2001, 155 D.P.R. _____ (2001), 2001 T.S.P.R. 132, 2001 J.T.S. 134, señalamos que:

> [N]o sólo los jueces en el desempeño de sus funciones, sino los abogados también están todos sujetos siempre a la obligación de no empañar la imagen de imparcialidad de la Judicatura. Por eso se les exige no sólo "tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas" sino, además, realizar todo lo que esté a su alcance "para lograr el más adecuado desenvolvimiento y desarrollo del proceso judicial". (Citas omitidas.)

La reiterada conducta impropia del licenciado Suárez Marchán resulta en extremo lesiva a la imagen, no únicamente de la Rama Judicial, sino de los miembros de la profesión legal. Ésta contraviene el Canon 38 de Ética Profesional, *supra*.

Por los fundamentos antes expuestos procede que censuremos enérgicamente al Lcdo. Yamil Suárez Marchán. Además, lo apercibimos que conducta similar en el futuro conllevará sanciones más severas.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

   Yamil Suárez Marchán

                             AD-2001-8

SENTENCIA

San Juan, Puerto Rico a 30 de junio de 2003

     Por los fundamentos expuestos en la Opinión Per Curiam que antecede, se dicta sentencia censurando enérgicamente al Lcdo. Yamil Suárez Marchán. Se le apercibe que conducta similar en el futuro conllevará sanciones más severas.

     Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no interviene.

                         Patricia Otón Olivieri
                 Secretaria del Tribunal Supremo