

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Eliseo Gaetán Mejías | 2011 TSPR 26<br><br>180 DPR _____ |

Número del Caso: CP - 2009 - 2

Fecha: 22 de febrero de 2011

Abogado del querellado:

      Por derecho Propio

Oficina de Asuntos Legales
Oficina de Administración
de los Tribunales

      Lcda. Milagros Rivera Guadarrama
      Directora

      Lcdo. Félix Fumero Pugliessi
      Asesor Legal

Oficina del Procurador General:

      Lcda. Edna E. Rodríguez Benítez
      Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicació n oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eliseo Gaetán Mejías

Conducta
Profesional

CP-2009-2

PER CURIAM

San Juan, Puerto Rico, a 22 de febrero de 2011.

El Lcdo. Eliseo Gaetán Mejías (querellado) fue objeto de una investigación por la Oficina de la Administración de los Tribunales (OAT), relacionada con ciertas actuaciones relacionadas al proceso de su renominación durante el año 2007. Dicha investigación arrojó un Informe en el cual se concluyó que éste había incurrido en violaciones al Canon 29 de Ética Judicial, 4 L.P.R.A. IV-A, y a los Cánones 9 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX. A consecuencia de esto, la conducta del querellado fue referida a la Comisión de Disciplina Judicial (Comisión de Disciplina) para la acción correspondiente.

A su vez, la Comisión de Disciplina concluyó que el querellado había incurrido en las violaciones éticas señaladas. De esta forma, presentó la Querella correspondiente y luego de los trámites de rigor se designó una Comisionada Especial para atenderla. Culminado este proceso, la Comisionada Especial sometió su Informe, el cual nos ha remitido y estamos prestos a ponderar.

**I**

El Lcdo. Eliseo Gaetán Mejías fue admitido al ejercicio de la abogacía el 6 de junio de 1983. Posteriormente, el 18 de diciembre de 1995, prestó juramento como juez superior y ejerció su cargo en distintas regiones judiciales. Durante los últimos cuatro (4) años de su término estuvo asignado a la Sala de Guaynabo del Tribunal de Primera Instancia. Una vez venció su nombramiento, el 18 de diciembre de 2007, el Gobernador de Puerto Rico le extendió un nombramiento de receso al mismo cargo de juez superior. De esta manera, fue asignado a la Región Judicial de Humacao. El querellado cesó en su cargo el 30 de junio de 2008, luego de que el Senado de Puerto Rico no considerara su nombramiento.

Mientras el querellado se desempeñaba como juez superior en la Sala de Guaynabo, solicitó renominación al cargo de Juez de Primera Instancia o ascenso al Tribunal de Apelaciones. El 11 de abril de 2007, fue evaluado por la Comisión de Evaluación Judicial (Comisión de Evaluación),

la cual rindió un Informe determinando que el querellado no estaba calificado para renominación o para ascenso.

Posteriormente, el 9 de mayo de 2007, el querellado se comunicó por escrito con la Comisión de Evaluación, expresando su insatisfacción con el resultado de su evaluación y solicitó una prórroga de treinta (30) días para recopilar la información necesaria con relación a sus calificaciones como juez y rebatir la determinación de que no estaba calificado. La Comisión de Evaluación accedió a su petición y le concedió la prórroga solicitada y además le concedió la oportunidad de que pudiera comparecer nuevamente a presentar sus objeciones con los criterios que se expresaron en el Informe emitido. Además, la Comisión de Evaluación le envió al querellado una lista que desglosaba los comentarios negativos recibidos por ésta sobre su desempeño como juez superior. Se le indicó que no estaban incluidos aquellos comentarios cuyo contenido permitía revelar la identidad del entrevistado. Asimismo, le solicitó que presentara un escrito con el resumen de los fundamentos que presentaría ese día.

El 20 de mayo de 2007, el querellado suscribió una carta, dirigida a abogados y abogadas, en papel encabezado con un membrete que hace referencia a su posición de juez superior. A continuación transcribimos la carta:

From The Desk of
Eliseo Gaetan Mejias
Superior Court Judge

"Invoke the imagination, Provoke the senses,
Evoke the emotions, ... for creative thinking
and knowledge."
G. Laliberté   E. Gaetán


Distinguido Letrado

Nos dirigimos a usted porque estamos seguros de
que no cree en que la maldad deba prevalecer
sobre el bien ni la injusticia sobre la justicia.

Por lo anterior, si usted considera que nos hemos
desempeñado adecuadamente en la función judicial,
nos urge que tenga a bien en hacer una carta
dirigida a:

Sr. Hugo Díaz, Director
Oficina de Nombramientos Judiciales
La Fortaleza, San Juan, P.R. 00901

Estando en la etapa final de evaluación para el
Tribunal de Apelaciones, el Hon. Francisco
Rebollo López, en su carácter de Presidente del
Comité Evaluador, nos ha dado como no
cualificados ni para el Tribunal de Apelaciones
ni para renominación al Tribunal Superior. Esto
sin duda es una agenda de algún enemigo invisible
que nos persigue desde Arecibo y que hasta ahora
ha logrado que no sean justos en la evaluación.

No tenemos otra forma de defendernos de esta
infamia, toda vez que se nos negó tener acceso a
los formularios de evaluación que tenían los
abogados y fiscales consultados sobre el
particular. Los renglones en que se nos ha
indicado como no cualificados en escala del 1 al
6 son los siguientes:

1. Reputación intelectual            No cualificado
2. Destrezas profesionales           No cualificado
3. Destrezas de comunicación         No cualificado
4. Temperamento Judicial             No cualificado
5. Calidad de Trabajo                No cualificado
6. Juicio Valorativo                 No cualificado

Ante este atropello a la dignidad del ser humano,
no nos queda otro recurso que dirigirnos a usted
para que nos apoye con el envío de una carta y
que la misma nos sea entregada cerrada y una
copia para nuestro récord, para solicitar una
cita con el Sr. Hugo Díaz, de manera que podamos
explicar con prueba que contradiga la errónea
apreciación de la Comisión, quien dicha (sic) sea

de paso, ninguno de sus componentes ha estado en nuestra Sala para palpar realmente el desempeño en la función judicial.

Con el testimonio de nuestro aprecio quedamos de usted.

Fdo. Eliseo Gaetán y Mejías. (Enfasis nuestro y en original).

El 28 de junio de 2007, la Directora Administrativa de la OAT, luego de recibir una copia de la preterida carta, le remitió una misiva al querellado en la que le solicitó que cesara y desistiera de inmediato de continuar diseminando la consabida carta. Esto con el propósito de que no continuara afectando la imagen de su persona como juez y el de la Rama Judicial. Le señaló que de su faz aparentaba surgir una violación al Canon 29 de Ética Judicial y le comunicó que se había iniciado una investigación al respecto. Asimismo, se le concedió un término de diez (10) días para que expusiera su posición por escrito sobre el contenido de la carta y se le informó que de no comparecer se continuaría con la investigación sin el beneficio de su comparecencia. La comunicación de la Directora incluyó copia de los documentos que motivaron el inicio de la investigación.

El 16 de julio de 2007, el querellado suscribió una carta dirigida al Juez Presidente Señor Hernández Denton, con copia a todos los Jueces Asociados. Cabe destacar que el querellado acompañó su comunicación con numerosas cartas de recomendación firmadas por más de sesenta (60) abogados y abogadas que tuvieron experiencias en las salas

presididas por él. En síntesis, el querellado objetó la evaluación que le hizo la Comisión de Evaluación Judicial y solicitó que se evaluara su solicitud de reconsideración con relación al resultado de la evaluación que le hizo la Comisión de Evaluación. Además, informó que había declinado comparecer ante la Comisión de Evaluación por segunda ocasión, por no "inspirarnos dicha Comisión ninguna confianza al darle credibilidad a meros comentarios y alegaciones, que en ningún Tribunal hubieran sido admitidas". Acotó que "[l]a Comisión de Evaluación Judicial, en nuestro caso particular, no ha actuado en la forma justa, imparcial y diligente que requiere su delicada encomienda"; la Comisión "nos ha negado el derecho a examinar los formularios que le dan base a su aberrada evaluación..."; la Comisión "[h]a llegado a unas conclusiones sobre nuestra labor totalmente sesgadas (*biased*) que no recogen en su contenido estocástico (aleatorio) la función judicial que hemos realizado".

Asimismo, el querellado señaló que "no le deslumbran las candilejas ni las frivolidades, como el aparecer en la Internet en el Cuadro de Honor de Jueces Excelentes, en una foto oficial ni en algún certificado de reconocimiento"; que lo habían tratado como a una "cosa" u "objeto". Finalmente, expresó que si tuviera que abandonar la Rama Judicial lo haría "con la frente en alto, con la satisfacción del deber excelentemente cumplido y, sobre todo, con el mal sabor de que los llamados por autonomasia

[sic] a impartir justicia, y teniendo la oportunidad de hacerlo, no lo hicieron con uno de sus pares".

El 7 de agosto de 2007, el querellado le envió una nueva carta al Juez Presidente en la cual le indicó que había sido notificado de la Querella iniciada en su contra por la OAT y le solicitó la desestimación de esta. Así también, adujo que el Canon 29 de Ética Judicial adolecía de vaguedad al prohibir gestiones indebidas sin establecer lo que era indebido, y que violaba el principio de legalidad por no establecer penalidad alguna por su incumplimiento. Sostuvo que los Cánones de Ética Judicial de 2005 creaban una clasificación inherentemente sospechosa de discrimen por condición social porque no le eran de aplicación a los jueces y juezas del Tribunal Supremo, en violación a la igual protección de las leyes. Esta carta fue considerada como una moción de desestimación de la acción tomada por la Directora Administrativa y mediante Resolución de 24 agosto de 2007, resolvió que era improcedente.

El 11 de septiembre de 2007, la entonces Subsecretaria de Justicia, Lizette Mejías, le cursó a la Directora de la OAT una carta con fecha de 11 de septiembre de 2007, informando que el entonces Secretario de Justicia, Roberto J. Sánchez Ramos, había recibido una carta suscrita por el entonces Juez Gaetán de fecha de 31 de agosto de 2007, en la cual le informaba que su nombramiento vencía el 17 de diciembre de 2007 y expresaba su agradecimiento a los

abogados y fiscales del Departamento de Justicia que habían postulado ante él a lo largo de su carrera judicial. A esta comunicación adjuntó copia de cuarenta y siete (47) cartas de abogados que habían postulado ante él, y que a su vez estos, le habían enviado al señor Hugo Díaz para abogar por su renominación.

Así las cosas, y como parte de la investigación realizada por la OAT, sus investigadores tomaron Declaraciones Juradas a distintos abogados que habían suscrito cartas para recomendar al querellado. De estas Declaraciones Juradas surge que las cartas de recomendación fueron remitidas tanto en fechas anteriores como en fechas posteriores a la comunicación que el querellado recibió de parte de la Directora Administrativa de la OAT solicitándole que desistiera de dicha práctica.

El 13 de noviembre de 2008, la OAT rindió su Informe sobre la investigación solicitada por el Juez Presidente. En este se concluyó que las actuaciones del querellado habían violentado el Canon 29 de Ética Judicial, así como los Cánones 9 y 38 de Ética Profesional. Se recomendó referir la Queja a la Comisión de Disciplina Judicial para la correspondiente Querella y trámite.

El 16 de enero de 2009, luego de recibido el Informe de Investigación en el que la Comisión de Disciplina determinó causa probable y dispuso que se presentara la querella correspondiente, este Tribunal designó a la Lcda. Crisanta González Seda para que recibiera la prueba y

rindiera el informe pertinente. Posteriormente, mediante Resolución de 2 de febrero de 2009, el Tribunal refirió la Querella a la Oficina del Procurador General para que compareciera como parte querellante en los procedimientos que serían seguidos a tenor de la Regla 14 del Reglamento del Tribunal Supremo.

El 13 de marzo de 2009 el querellado compareció a contestar la Querella presentada. Solicitó la desestimación de la misma por entender que la conducta que se le imputaba ocurrió mientras él se desempeñaba como juez. A tales efectos señaló que los Cánones de Ética Profesional rigen la conducta de los abogados pero no de los jueces en funciones. Asimismo, sostuvo que las cartas que él envió no pueden catalogarse contrarias a los Cánones 9 y 38 de Ética Profesional. Además, arguyó que no procedía concluir que había incumplido el Canon 29 de Ética Judicial porque al momento de emitirse el Informe de Investigación ya él no fungía como juez. También señaló que aunque para propósitos de argumentación se asumiera que el contenido de las cartas era contrario a los cánones que se le imputaban, ya él había sido sancionado cuando, al extendérsele un nombramiento de receso en diciembre de 2007, fue asignado a la Región Judicial de Humacao.

Luego de varios incidentes procesales, el 31 de marzo de 2009 se celebró una vista sobre los procedimientos en la que el caso quedo sometido por el expediente, a petición de la Oficina de la Procuradora General, para ser resuelto por

la Comisionada Especial. El 17 de diciembre de 2009, ésta nos remitió el Informe culminado. Concluyó que la conducta del querellado estaba reñida con el Canon 29 de Ética Judicial por lo que se configuró una violación de los Cánones 9 y 38 de Ética Profesional. El querellado no ha replicado el Informe de la Comisionada y tampoco nos ha solicitado término para hacerlo. Así, el asunto queda sometido ante nuestra consideración para su resolución.

## II

En primer orden debemos atender el argumento jurisdiccional esbozado por el querellado. Este señala que no tenemos jurisdicción para sancionarlo porque la conducta que se le imputa ocurrió mientras se desempeñaba como juez. Por tal razón, sostiene que no cabe encontrarlo incurso en una violación a los Cánones de Ética Judicial.

La jurisdicción disciplinaria del Tribunal Supremo de Puerto Rico sobre los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones emana del Art. V, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2002.[1] Bajo el palio de ese mandato constitucional, este Tribunal aprobó los Cánones de Ética Judicial de 2005, los cuales pautan las normas mínimas de conducta que todo

---

[1] El Art. V, Sec. 11 de la Constitución de Puerto Rico establece que:

Los jueces del Tribunal Supremo podrán ser destituidos por las causas y mediante el procedimiento que esta Constitución establece en la Sección 21 del Art. III. Los jueces de los demás tribunales podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley. L.P.R.A., Tomo 1, ed. 2002.

juez debe observar rigurosamente. 4 L.P.R.A., Ap. IV-B; *In re Scherrer Caillet-Bois*, 162 D.P.R. 842, 858 (2004).

Los Cánones de Ética Judicial están dirigidos a reglamentar la conducta de los abogados o abogadas que se desempeñen como jueces o juezas. Sin embargo, hemos sostenido que la renuncia de un querellado a su posición en la Judicatura o la expiración del término de su nombramiento no es óbice para que este Tribunal pase juicio sobre aquellas acciones en que éste incurrió mientras fungía como juez y que enmarquen violaciones a dichas normas de comportamiento. *In re Suárez Marchán*, 159 D.P.R. 724, 735 (2003); *In re Campoamor Redín*, 150 D.P.R. 138, 149 (2000); *In re Liceaga*, 82 D.P.R. 252, 257 (1961). En ese tenor hemos resuelto que el cese en las funciones de un magistrado, ya sea por motivo de renuncia, por la no renominación o por la separación del cargo, no impide que se continúe el proceso disciplinario si la naturaleza de la conducta imputada puede dar lugar al desaforo, a la suspensión de la abogacía o a otras medidas disciplinarias". *In re Campoamor Redín*, *supra*.

De la misma manera, la Regla 33(a) de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B, establece que:

> La renuncia o la expiración de nombramiento de la jueza o del juez querellado no impedirá que continúe el procedimiento disciplinario en su contra al amparo de este reglamento. La comisión determinará si la conducta amerita la recomendación de imponerle a la juez o al juez querellado medidas disciplinarias por violación al Código de Ética Profesional. Véase, *In re Lugo Rodríguez*, 149 D.P.R. 551, 555 (1999).

Es decir, el hecho de que un abogado no ostente su cargo como juez, no nos impide concluir, si los hechos así lo demuestran, que ha incurrido en conducta reñida con los Cánones de Ética Profesional. Según señalamos en *In re Sherrer Caillet-Bois*, *supra*, pág. 859, esto es así porque determinar lo contrario seria atentar contra el propósito social de evitar que la justicia se vea frustrada al tornarse académica una Querella por el sólo hecho de que un juez cese en su cargo. Asimismo, resultaría incompatible con la facultad inherente que tiene este Tribunal para reglamentar el ejercicio de la abogacía. *Íd.*; *In re Suárez Marchán*, *supra*, pág. 735.

Por lo tanto, la no confirmación del querellado y el hecho de que ya no se desempeñe como juez, no priva a este Tribunal de pasar juicio sobre sus actuaciones mientras fue miembro de la judicatura y de determinar si éste infringió alguno de los Cánones de Ética Profesional.

### III

Como ya indicamos, la Comisionada Especial concluyó en su Informe que las actuaciones del querellado violaron el Canon 29 de Ética Judicial. Además, acotó que como tales actos tienen implicaciones que trascienden las responsabilidades del querellado como juez, y se proyectan en su carácter personal y en su vida profesional como abogado, constituyen violaciones a los Cánones 9 y 38 de Ética Profesional.

*A priori*, no albergamos duda de que los hechos determinados por la Comisionada Especial en su Informe reflejan que la conducta del querellado, mientras se desempeñó como Juez del Tribunal de Primera Instancia, constituyó una violación al Canon 29 de Ética Judicial, *supra*. Este Canon requiere que los jueces y juezas se abstengan de realizar gestiones indebidas para lograr ascensos, obtener una renominación a la judicatura o para obtener cualquier otro cargo público. *Íd.* Esta prohibición incluye todo tipo de gestión indebida tanto para beneficio del juez como a favor de otras personas, pero excluye los trámites oficiales ante los organismos que asesoran al Poder Ejecutivo y al Poder Legislativo sobre nombramientos judiciales. *Íd.*

Como ya hemos apuntado, el juez para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones tiene que ser y proyectarse como un ser humano sin tacha. Es decir, no solamente tiene que ser bueno, sino también parecerlo. *In re Hernández Torres*, 167 D.P.R. 823, 848-849 (2006), citando a C.J. Irizarry Yunqué, *La ética judicial*, Año 9 (Núms. 1-4) Forum 4 (octubre 1993). Los magistrados se convierten en depositarios de la confianza del Pueblo de que la administración de la justicia se llevará a cabo por personas de una conducta intachable. *In re Robles Sanabria*, 151 D.P.R. 483, 510 (2000). Por lo tanto, esta confianza obliga al juez a ser previsor y analizar las posibles consecuencias de sus actos en términos de las impresiones

que podrían recibir terceras personas y debe estar muy pendiente de situaciones que puedan afectar negativamente su imagen. *In re Hernández Torres*, *supra*; *In re Suárez Marchán*, *supra*, pág. 740; *In re Ortiz Rivera*, 163 D.P.R. 530, 536 (2004). Por eso, este Tribunal ha sido consistente al señalar que la profesión judicial no admite términos medios. *In re Nevárez Zavala*, 123 D.P.R. 511, 524 (1989).

El prestigio del juez no es un activo que deba utilizarse para gestionar privilegios o concesiones que de otro modo no hubieran podido obtenerse. *In re Almodóvar Marchany*, 167 D.P.R. 421, 434 (2006). El prestigio del cargo, y la reputación bien ganada, sólo pueden ser carta de presentación en el ejercicio de las funciones judiciales. *Íd.* Por ello, los jueces deben ser sumamente cuidadosos y prudentes al manejar asuntos exógenos a la función judicial para evitar crear la apariencia de que utiliza el título de juez como instrumento de intimidación o para imprimir mayor peso a sus reclamos personales. *Íd.*

Por consiguiente, estamos convencidos de que la carta enviada por el querellado a distintos abogados y abogadas para que éstos recomendaran su renominación o ascenso con el Director de la Oficina de Nombramientos Judiciales en la Fortaleza, no es una gestión legítima en el proceso de realizar una solicitud formal para esa renominación o ascenso. Dicha carta les solicitaba a los letrados que lo recomendaran solamente si consideraban que el querellado se desempeñaba adecuadamente en la función judicial. Tal

actuación colocó al querellado en una posición donde su imparcialidad podía ser cuestionada debido a que la carta enviada daba la impresión de que los abogados y abogadas que no lo recomendaran no consideraban que el querellado se desempeñaba de forma adecuada. A tal efecto, es razonable colegir que el abogado o abogada que recibiera dicha solicitud podía pensar que si se negaba a enviar la carta los casos que tenía con el juez podían verse afectados. Esto en definitiva es contrario al Canon 29 de Ética Judicial, *supra*.

Ahora bien, el 30 de junio de 2008, el licenciado Gaetán Mejías cesó en su cargo como juez luego de que el Senado de Puerto Rico no considerara su nombramiento. Así, el hecho de que el licenciado Gaetán Mejías ya no forma parte de la judicatura nos impide sancionarlo de acuerdo a los Cánones de Ética Judicial. Véanse, *In re Busó Aboy*, 166 D.P.R. 49, 60-61 (2005); *In re Saavedra Serrano*, 165 D.P.R. 817, 828-829 (2005); *In re Suárez Marchán*, *supra*, pág. 745; *In re Lugo Rodríguez*, *supra*. Por consiguiente, nos enfocaremos a examinar su conducta a la luz de las disposiciones de los Cánones del Código de Ética Profesional.

**IV**

En innumerables ocasiones hemos aseverado, con relación a casos de conducta profesional, que este Tribunal no está obligado a aceptar el Informe de un Comisionado Especial. Podemos adoptar el Informe, modificarlo e,

incluso, rechazarlo. *In re Semidey Morales*, 151 D.P.R. 842, 844 (2000); *In re López de Victoria Brás*, 135 D.P.R. 688, 695 (1994); *In re Soto López*, 135 D.P.R. 642, 646 (1994); *Vélez Ruiz v. E.L.A.*, 111 D.P.R. 752, 757-758 (1981. Precisamente, en el presente caso no coincidimos totalmente con la apreciación jurídica de la Comisionada Especial, según expuesta en su Informe, con relación a la aplicación del Canon 9 de Ética Profesional, 4 L.P.R.A. Ap IX, en el contexto del presente caso.

De entrada creemos que el querellado no infringió dicho postulado. Esta norma reza:

### Conducta del abogado frente a los tribunales

El abogado debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados contra los jueces o contra el buen orden en la administración de la justicia en los tribunales. En casos donde ocurrieren tales ataques o atentados, el abogado debe intervenir para tratar de restablecer el orden y la buena marcha de los procedimientos judiciales.

El deber de respeto propio para con los tribunales incluye también la obligación de tomar las medidas que procedan en ley contra funcionarios judiciales que abusan de sus prerrogativas o desempeñan impropiamente sus funciones y que no observen una actitud cortés y respetuosa. (Énfasis nuestro). Canon 9 de Ética Profesional, *supra*.

Al interpretar el Canon 9 de Ética Profesional, *supra*, hemos señalado que este requiere "que los abogados, cuando hayan de dirigirse al tribunal --aun para criticarle-- lo hagan con respeto y deferencia". *In re Crespo Enríquez*, 147 D.P.R. 656, 662-663 (1999). Es decir, se trata de un

postulado que rige la conducta de los abogados frente al tribunal, tal y como lo sugiere el propio título del Canon.

De una simple lectura de este principio deontológico surge que se refiere a la conducta de los abogados ante los tribunales. Se trata de la imposición de un deber de comportamiento exclusivamente dirigido a los abogados y no a los jueces. De ahí, que el Canon imponga como deber que el abogado desaliente ataques injustificados en contra de los jueces o del buen orden en la administración de la justicia y no viceversa. Es decir, el Canon no les impone a los jueces el deber de desalentar ataques injustificados en contra de los mismos jueces o del buen orden en la administración de la justicia. El deber impuesto es exclusivo a los abogados.

El Canon establece que los abogados tienen el deber de velar por la conducta y comportamiento de los funcionarios judiciales, entre los cuales resalta evidentemente la figura del juez. Por ende, del propio lenguaje del Canon 9 de Ética Profesional, *supra*, surge de forma conspicua que este fue diseñado para regular el comportamiento de los abogados con relación al tribunal y los jueces; no así el comportamiento de los jueces.

De hecho este Tribunal ha sostenido que este precepto está dirigido a regular la conducta del abogado litigante en corte. *In re Busó Aboy*, *supra*, pág. 66; *In re Saavedra Serrano*, *supra*, pág. 829. En *In re Saavedra Serrano*, *supra*, la conducta anti ética imputada al licenciado Saavedra

ocurrió mientras este fungía como juez. Allí, la Oficina de Administración de Tribunales presentó una querella en la que se le imputó al licenciado Saavedra haber violado, *inter alia*, el Canon 9 de Ética Judicial. Empero la Comisión de Disciplina y de Separación del Servicio por razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones, determinó que no hubo violación a dicho Canon porque este había sido diseñado con el fin de regir la conducta de los miembros de la profesión legal en los tribunales y que, por lo tanto no aplicaba a los jueces. Este Tribunal confirmó esa apreciación y sostuvo que el Canon 9 de Ética Profesional, *supra*, no le es de aplicación a los jueces. *Íd.* Por ende, concluyó que las actuaciones del licenciado Saavedra no constituyeron violaciones al Canon 9 de Ética Profesional. A igual conclusión llegó este Tribunal en el caso de *In re Busó Aboy*, *supra*.

Cabe destacar, que este Canon se ha aplicado en una amplia gama de situaciones. Así por ejemplo, hemos determinado que la desatención a las órdenes del Tribunal por parte de un abogado, constituyen una violación al Canon 9 de Ética Profesional, *supra*. *In re Torres Viera*, res. el 17 de septiembre de 2010, 179 D.P.R. ___ (2010), 2010 T.S.P.R. 209, 2010 J.T.S. ___; *In re Davila Toro*, res. el 30 de agosto de 2010, 179 D.P.R. ___ (2010); 2010 T.S.P.R. 195; 2010 J.T.S. 204. También hemos señalado que "el abogado no tiene licencia absoluta en el uso del lenguaje

para poner en entredicho o mancillar la dignidad de los jueces". *In re López de Victoria I*, 163 D.P.R. 1, 8 (2004). De la misma forma hemos afirmado que es nefasto para la buena práctica de la profesión que un abogado haga serias imputaciones sobre el obrar de un juez cuando las mismas no están avaladas por evidencia contundente e indubitada. *Íd.;* *In re Roche Santorro*, res. el 30 de junio de 2008, 174 D.P.R. ___ (2008), 2008 T.S.P.R. 125, 2008 J.T.S. 145; *In re Crespo Enríquez*, *supra*, pág. 663.

Resulta también ser una violación al Canon 9 de Ética Profesional, el que un abogado durante la toma de deposición de su cliente se comporte de tal forma que no propicie un ambiente de solemnidad y decoro o que desobedezca las instrucciones emitidas por un juez con relación a la forma en que debe conducirse la deposición. *In re González Carrasquillo*, 164 D.P.R. 813 (2005). A su vez, conculca este principio el abogado que en lugar de utilizar argumentos persuasivos para convencer al tribunal, recurra al uso de lenguaje soez para adelantar los intereses de su cliente. *In re López de Victoria I*, *supra*, pág. 8. Tampoco se ajusta al Canon 9 de Ética Profesional, *supra*, aquel abogado que "observe una conducta irrespetuosa y poco profesional contra los empleados de la Rama Judicial, en asuntos relativos a la administración de la Justicia...". *In re Barreto Ríos*, 157 D.P.R. 352, 357 (2002). Igualmente, viola este precepto el abogado que se niegue de forma injustificada a aceptar la designación como

abogado de oficio que le haga el Tribunal de Primera Instancia o que se niegue a proveerle su dirección al tribunal. *In re Rodríguez Santiago*, 157 D.P.R. 26, 36 (2002). También podría infringir este postulado, el abogado que se adentra en las oficinas de un juez sin haber recibido autorización para ello. *In re Miranda Marchand*, 135 D.P.R. 580, 589 (1994).

Como puede notarse, el Canon 9 de Ética Profesional, *supra*, si bien se ha aplicado en múltiples contextos, nunca se le ha aplicado a un juez por una conducta irrespetuosa frente a los tribunales o a un abogado por actuaciones cometidas mientras ejercía como juez. No hemos encontrado ningún precedente en el cual eso haya sucedido. Su radio de alcance se ha limitado al comportamiento anti ético de los abogados.

En el caso de autos, es un hecho incontrovertido que la conducta violatoria que se le imputa al querellado fue desplegada durante su incumbencia como Juez Superior del Tribunal de Primera Instancia de Puerto Rico. Esto es así ya que mientras fungía como Juez Superior fue que el querellado dirigió una comunicación al Juez Presidente de este Foro en la que cuestionó la imparcialidad de la Comisión de Evaluación Judicial. Por lo tanto, diferimos del Informe sometido por la Comisionada Especial y concluimos, al igual que lo hicimos en *In re Busó Aboy*, *supra* y en *In re Saavedra Serrano*, *supra*, que el Canon 9 de Ética Profesional, *supra*, no le es de aplicación a los

jueces y, por ende, tampoco le aplica al querellado por las acciones cometidas cuando era Juez.

V

Por otro lado, coincidimos con la Comisionada Especial en cuanto a que las actuaciones del querellado infringieron el Canon 38 de Ética Profesional, 4 L.P.R.A. Ap. IX. Éste, distinto al Canon 9, sí se ha aplicado a los abogados por sus actuaciones mientras ejercían el cargo de juez. Véanse, *In re Campoamor Redín*, *supra*, pág. 153; *In re Suárez Marchán*, *supra*, pág. 745; *In re Sherrer Caillet-Bois*, *supra*, pág. 869; *In re Busó Aboy*, *supra*, págs. 66-67. En lo pertinente, este Canon dispone que:

> El abogado deberá esforzarse al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Canon 38 de Ética Profesional, *supra*.

Este Tribunal ha señalado que este Canon extiende la obligación de los abogados de conducirse en forma digna y honrada a su vida privada. *In re Quiñones Ayala*, 165 D.P.R. 138, 145 (2005). Esto debido a que "la apariencia de conducta impropia puede resultar muy perniciosa con respecto de la ciudadanía por sus instituciones de justicia y a la confianza que los clientes depositan en sus abogados". *In re Ortiz Martínez*, 161 D.P.R. 572, 588 (2004). En ese tenor hemos señalado que siendo los abogados el espejo donde se refleja la imagen de la profesión, éstos deben actuar con

el más escrupuloso sentido de responsabilidad que impone la función social que ejercen. *In re Silvagnoli Collazo*, 154 D.P.R. 533, 541 (2001); *In re Coll Pujols*, 102 D.P.R. 313, 319 (1974). Por eso, "el abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque eso implique ciertos sacrificios personales". *In re Busó Aboy*, *supra*, pág. 65. De ahí que "[l]a práctica de la abogacía, distinto quizás a otras profesiones, conlleva una seria y delicada función ciudadana pues la misma representa servicio, ética y ejemplo". *In re Santiago Rodríguez*, 160 D.P.R. 245, 254 (2003); *Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599, 613 (1993). En fin, los abogados --y por consiguiente los jueces-- deben traslucir en la praxis un sentido de justicia que sea inmaculada, no solamente en su realidad interior, sino también en su apariencia externa. Véase, *In re Rodríguez Torres*, 104 D.P.R. 758, 766 (1976).

A la luz de lo anterior, estamos convencidos de que la carta enviada por el querellado a distintos abogados y abogadas para que éstos recomendaran su renominación o ascenso con el Director de la Oficina de Nombramientos Judiciales en la Fortaleza, no sólo fue una gestión aparentemente impropia sino que fue en realidad impropia. Como ya dijimos, la carta les solicitaba a los abogados que redactaran una carta de recomendación solamente si consideraban que el querellado se desempeñaba adecuadamente en la función judicial. Además, la misiva les pedía a los abogados que de remitir la carta de recomendación, le

enviaran una copia al querellado. Como ya dijimos tal actuación colocó al querellado en una posición donde su imparcialidad podía ser cuestionada debido a que la carta enviada daba la impresión de que los abogados y abogadas que no lo recomendaran no consideraban que el querellado se desempeñaba de forma adecuada. Más aún, la naturaleza de la petición, a nuestro entender, creó la apariencia de que el querellado quiso aprovecharse de su posición como juez para obtener un beneficio personal. Esto sin duda no es un buen ejemplo de responsabilidad ética.

Asimismo, somos del parecer de que el lenguaje utilizado por el querellado en esa carta y en la que le envió al Juez Presidente, el 16 de julio de 2007, no fue el más apropiado. Allí, sin fundamento alguno, el querellado puso en duda la integridad y honestidad de los miembros de la Comisión de Evaluación Judicial.[2]

En síntesis, ni el haber enviado la carta a los abogados para solicitarles que lo recomendaran, ni las expresiones vertidas por el querellado en esa misiva y en

---

[2] En la carta dirigida a los abogados, el querellado señala que la Comisión de Evaluación Judicial atropelló su dignidad con la evaluación que le hicieron. Así, describe como un acto de maldad e infamia dicha evaluación. Todo esto sin tener prueba que sustente su postura.

Además, en la carta del 16 de julio de 2007, dirigida al Juez Presidente, el querellado objetó el informe emitido por la Comisión de Evaluación Judicial, aduciendo que ésta no había actuado en forma justa, imparcial y diligente; que había llevado a cabo una aberrada evaluación; que lo habían tratado como una cosa u objeto; que había llegado a unas conclusiones sobre su labor totalmente sesgadas; que si tuviera que abandonar la Rama Judicial lo haría con la frente en alto, con la satisfacción del deber excelentemente cumplido y con el mal sabor de que los llamados por antonomasia a impartir justicia no lo hicieron con uno de sus pares, etc.

la que le dirigió al Juez Presidente, son actuaciones que exaltan el honor y la dignidad de la profesión legal.

**VI**

Por último, debemos determinar que sanción le vamos a imponer al querellado. Para ello, es necesario hilvanar las circunstancias y contornos de la casuística con el objeto de equiparar, lo más que sea posible, la sanción que le impongamos al querellado con las que les impusimos, en otros contextos, a otros abogados.

Así por ejemplo, en el caso de *In re Vélez Collado*, 159 D.P.R. 422 (2003), este Tribunal censuró enérgicamente al Juez Vélez Collado luego de que éste emitiera una orden de desacato en contra de una parte y no de su representante legal a pesar de que fue por culpa de la ausencia del representante legal y no de la parte, que se había suspendido el juicio en varias ocasiones, incluyendo la ausencia que motivo el desacato. Las razones aducidas por dicho juez para así proceder fueron las siguientes:

> La vez anterior este caso se suspendió porque también usted compareció sin representación legal. La verdad que la conducta, **yo no sé si es imputable a usted o no, pero yo se la voy a imputar a usted**, después usted se defiende. Este Tribunal le va a imponer una fianza de $20,000 por el delito de desacato y ordena su ingreso en la cárcel hasta tanto presente los $20,000. Cualquier otro asunto resuélvalo con su abogado y le vamos a conseguir una fecha de señalamiento para esta vista. (Énfasis suplido).

En ese caso, el perjudicado fue ingresado en la cárcel hasta que se le concedió una vista de rebaja de fianza en la que otro Juez no solamente le rebajó la fianza sino que

autorizó a que se prestara el diez porciento (10%) de esta, opción que el Juez Vélez Collado le había negado a la parte perjudicada.

A su vez, en *In re Pérez Rodríguez*, 91 D.P.R. 219 (1964), este Tribunal censuró enérgicamente al Juez Pérez Rodríguez luego de que éste le ordenara a la policía arrestar a una persona porque ésta se negó a permitirle el acceso a una actividad debido a que el Juez se negaba a pagar la entrada. Si bien es cierto que en ese caso no hubo consenso en torno a la sanción impuesta, la mayoría le impuso a dicho Juez una censura enérgica.

Un tercer ejemplo lo encontramos en el caso de *In re Castro Colón*, 155 D.P.R. 110 (2001). Allí, este Tribunal censuró enérgicamente a la Jueza Castro Colón por haber intervenido indebidamente en un pleito de divorcio. En ese caso, Cesar Méndez Otero, quien a su vez era el Alcalde del Municipio de Río Grande, le pidió a la magistrada que interviniese con su esposa, la señora García Rodríguez, a fin de reglamentar las relaciones entre ellos como parte del proceso de divorcio. La Jueza accedió a tal petición y procedió a comunicarse con la señora García Rodríguez, pidiéndole que pasara por su oficina para discutir lo relevante al caso de divorcio. La señora García Rodríguez acudió a la oficina de la magistrada y sometió una moción en la cual le pidió a ésta que terminara su intervención en el caso entre ella y su esposo. Empero, y a pesar de haber

declarado con lugar dicha moción, la Jueza Castro Colón volvió a intervenir con el asunto en cuestión.

Ésta emitió una orden *ex parte* dirigida a la Policía de Puerto Rico para que acompañara al Alcalde Méndez Otero hasta la residencia de la señora García Rodríguez, de manera que éste pudiese recoger su ropa y otros documentos. La orden además apercibía a la señora García Rodríguez a no intervenir con el cumplimiento de dicha orden. Luego de que se tratara de llevar a cabo lo dispuesto en la orden infructuosamente, por razón de que la señora García Rodríguez no estaba en su casa, la Jueza Castro Colón declaró a la señora García Rodríguez incursa en desacato civil y le impuso una multa de cien dólares ($100).

Cabe señalar que la Comisión en dicho caso a la hora recomendar la sanción, tomo en consideración el hecho de que la Jueza Castro Colón nunca antes había incurrido en alguna falta y que la conducta de la magistrada no había resultado en beneficio alguno para ella.

En *In re Saavedra Serrano*, *supra*, este Tribunal se limitó a censurar enérgicamente al Lcdo. Luis G. Saavedra Serrano, con un apercibimiento contra futuras infracciones. Ello se hizo en vista de que se trataba de la primera ofensa de éste. En ese caso, se concluyó que el licenciado Saavedra Serrano no se condujo en su sala de forma serena, imparcial y respetuosa con el querellante. A tales efectos señalamos:

> El licenciado Saavedra Serrano, desde el comienzo de la vista, actuó de forma hostil y descortés al

dirigirse al querellante, y en varias ocasiones hizo alusión a su poder y autoridad para "meterl[o] preso". Además, aun cuando el acusado querellante manifestó —en forma serena y respetuosa—ser una persona indigente y que carecía de representación legal, el querellado, de forma severa y abusiva, le advirtió que si no lo hacía "lo iba a lamentar"; le ordenó buscar representación legal sin hacer uso de su facultad para asignarle un abogado de oficio. Igualmente, el licenciado Saavedra Serrano, aun cuando advirtió alguna condición mental o emocional de González Salas [querellante], no observó sensibilidad alguna y continuó dirigiéndose a éste de forma recia y despectiva, lo que ocasionó que, finalmente, González Salas reaccionara en la forma en que lo hizo.

........

Resulta evidente que, con su proceder, el licenciado Saavedra Serrano lo que hizo fue intimidar innecesariamente a un ciudadano humilde y afectado emocionalmente, lo cual denigra la profesión legal, promoviendo y ocasionando que este ciudadano reaccionara de la forma en que lo hizo y perdiera el control sobre su comportamiento. *In re Saavedra Serrano*, *supra*, págs. 830-831.

Como se puede apreciar, en los precedidos casos la sanción impuesta por este Tribunal consistió en la censura enérgica. Ello, a pesar de que las conductas allí ejemplificadas y sancionadas eran tan o más ominosas que las manifestadas por el querellado en el presente caso. De hecho, los excesos cometidos por los jueces en tales casos, distinto al de autos, tuvieron repercusiones negativas con terceras personas, infringiéndole la libertad, imponiéndole sanciones económicas de manera injustificada o denigrando su dignidad con faltas de respeto y actitudes poco imparciales.

En el caso de autos, aunque las actuaciones del querellado iban dirigidas a intentar lograr su renominación o ascenso como juez por un nuevo término, éste no logró su renominación ni ascenso dentro de la judicatura. Es decir, no logró obtener un beneficio propio. Asimismo, debemos destacar, como lo hace la Comisionada Especial en su Informe, que el querellado en veintiséis (26) años de práctica en la profesión no había cometido ninguna falta o conducta reñida con los Cánones de Ética Profesional. A su vez, como ya discutimos, el Canon 9 de Ética Profesional, *supra*, no le es de aplicación al querellado en el contexto de este caso.

Por los fundamentos expuestos, la prudencia nos aconseja a censurar enérgicamente al querellado con un apercibimiento sobre conducta similar en el futuro.

Se dictará sentencia de conformidad

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                           Conducta

Eliseo Gaetán Mejías                           Profesional

CP-2009-2

SENTENCIA

San Juan, Puerto Rico, a 22 de febrero de 2011.

Por los fundamentos antes expresados, censuramos enérgicamente al licenciado Gaetán Mejías con un apercibimiento sobre conducta similar en el futuro.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente a la cual se unen el Juez Presidente Señor Hernández Denton y la Jueza Asociada Señora Fiol Matta.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

                              CP-2009-02

Eliseo Gaetán Mejías

Opinión disidente emitida por la Juez Asociada señora Rodríguez
Rodríguez a la que se le une el Juez Presidente señor Hernández
Denton y la Jueza Asociada señora Fiol Matta

        San Juan, Puerto Rico, a 22 de febrero de 2011

        El licenciado Eliseo Gaetán Mejías (el
querellado o el licenciado Gaetán Mejías) fue admitido
al ejercicio de la abogacía el 6 de junio de 1983.
Doce años más tarde, el 18 de diciembre de 1995,
juramentó como juez superior y ejerció su cargo en
varias regiones judiciales.  Durante los últimos
cuatro años de su término estuvo asignado al Tribunal
de Primera Instancia, Sala de Guaynabo.  El 18 de
diciembre de 2007, vencido ya su término, el
Gobernador del Estado Libre Asociado de Puerto Rico le
extendió un nombramiento de receso al mismo cargo de
juez superior.  El licenciado Gaetán Mejías fue

asignado a ejercer como juez en la Región Judicial de Humacao. El Senado de Puerto Rico no consideró su nombramiento por lo que cesó en su cargo el 30 de junio de 2008.

El licenciado Gaetán Mejías fue objeto de una investigación por la Oficina de Administración de los Tribunales (OAT), relacionada con ciertas actuaciones en torno al proceso de su renominación durante el año 2007. Como resultado de la referida investigación, se rindió un informe de investigación en el cual se concluía que el licenciado Gaetán Mejías había incurrido en violaciones al Canon 29 de los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-A, y a los Cánones 9 y 38 del Código de Ética Profesional. 4 L.P.R.A. Ap. IX. Ello dio paso a que la conducta del licenciado Gaetán Mejías fuese referida a la Comisión de Disciplina Judicial (la Comisión de Disciplina) para la acción correspondiente.

La Comisión de Disciplina concluyó que, en efecto, el licenciado Gaetán Mejías había incurrido en las violaciones éticas señaladas por lo que se presentó la correspondiente querella y luego de los trámites de rigor se designó una Comisionada Especial para atenderla. Concluido este proceso, la Comisionada Especial emitió su informe, el cual nos ha remitido. Nos corresponde en este momento aquilatar dicho informe y evaluar la conducta del licenciado Gaetán Mejías.

Comenzamos nuestro análisis con un resumen detallado de los hechos que dan base a la querella presentada contra el licenciado Gaetán Mejías.

I

Mientras el licenciado Gaetán Mejías se desempeñaba como juez superior, y presto a vencer su nombramiento, éste solicitó ser renominado al cargo de juez del Tribunal de Primera Instancia o ascendido al Tribunal de Apelaciones. El 11 de abril de 2007, la Comisión de Evaluación Judicial (la Comisión de Evaluación o la Comisión) llevó a cabo una evaluación del desempeño del querellado.  Ésta emitió un informe en el cual concluyó que el querellado no estaba calificado para renominación o para ascenso.

El 9 de mayo de 2007, el querellado se comunicó por escrito con la Comisión de Evaluación expresando su disconformidad con los resultados de su evaluación y solicitó una prórroga para recopilar aquella información necesaria referente a sus cualificaciones como juez y rebatir la determinación de que no estaba calificado.  La Comisión de Evaluación le concedió la prórroga solicitada y además le informó que tendría una segunda oportunidad para comparecer ante sí y presentar sus objeciones al informe de evaluación emitido.  La comunicación que se le envió iba acompañada con un desglose de los comentarios negativos recibidos por la Comisión de Evaluación sobre su desempeño como juez.  Se indicaba también que no se le incluían aquellos comentarios cuyo contenido permitiría que se

identificase al entrevistado. Se le solicitó además que presentase un escrito con un resumen de los fundamentos que esgrimiría en su día ante la Comisión de Evaluación para refutar las conclusiones del informe.

Así las cosas, el 10 de mayo de 2007 el licenciado Gaetán Mejías suscribió una carta dirigida a abogados y abogadas. Por su importancia, transcribimos en su totalidad la carta suscrita por el querellado:

> FROM THE DESK OF
> ELISEO GAETAN MEJIAS
> SUPERIOR COURT JUDGE
>
> "Invoke the imagination, Provoke the senses,
> Evoke the emotions,… for creative thinking and knowledge."
> G. Laliberté  E. Gaetán
>
> Distinguido Letrado
> Nos dirigimos a usted porque estamos seguros de que **no cree en que la maldad deba prevalecer sobre el bien ni la injusticia sobre la justicia.** Por lo anterior, si usted considera que nos hemos desempeñado adecuadamente en la función judicial, **nos urge que tenga a bien en hacer una carta** dirigida a:
>     Sr. Hugo Díaz, Director
>     Oficina de Nombramientos Judiciales
>     La Fortaleza, San Juan, P.R. 00901
>
> Estando en la etapa final de evaluación para el Tribunal de Apelaciones, el Hon. Francisco Rebollo López, en su carácter de Presidente del Comité Evaluador, nos ha dado como no cualificados ni para el Tribunal de Apelaciones ni para renominación al Tribunal Superior. **Esto sin duda es una agenda de algún enemigo invisible que nos persigue desde Arecibo y que hasta ahora ha logrado que no sean justos en la evaluación. No tenemos otra forma de defendernos de esta infamia,** toda vez que se nos negó tener acceso a los formularios de evaluación que tenían los

abogados y fiscales consultados sobre el particular. Los renglones en que se nos ha indicado como no cualificados en escala del 1 al 6 son los siguientes:

1. Reputación intelectual          No cualificado
2. Destrezas profesionales         No cualificado
3. Destrezas de comunicación       No cualificado
4. Temperamento judicial           No cualificado
5. Calidad de trabajo              No cualificado
6. Juicio valorativo               No cualificado

**Ante este atropello a la dignidad del ser humano, no nos queda otro recurso que dirigirnos a usted para que nos apoye con el envío de una carta y que la misma nos sea entregada cerrada y una copia para nuestro récord**, para solicitar una cita con el Sr. Hugo Díaz, de manera que podamos explicar con prueba que contradiga la errónea apreciación de la Comisión, quien dicha (sic) sea de paso, ninguno de sus componentes ha estado en nuestra Sala para palpar realmente el desempeño en la función judicial.
Con el testimonio de nuestro aprecio quedamos de usted.
Cordialmente,
Fdo. Eliseo Gaetán y Mejías.    (**Énfasis nuestro y en original.**)

El 28 de junio de 2007, la Directora Administrativa de la OAT, luego de recibir copia de la antes transcrita carta así como de una carta enviada por una abogada al señor Díaz, le envió una comunicación al licenciado Gaetán Mejías indicándole que se había iniciado una investigación en su contra habida cuenta de que dicha carta, de su faz, aparentaba estar en conflicto con el Canon 29 de Ética Judicial. En la comunicación enviada, la Directora le solicitó al querellado que cesara y desistiera de continuar con el envío de este escrito para evitar así que ello mancillara la imagen de la Rama Judicial así como la del propio juez. Se le concedió un término de diez días para que se expresara sobre el contenido de la carta y se le informó que de no comparecer se continuaría con la

investigación sin el beneficio de su comparecencia. La carta de la Directora venía acompañada con copia de los documentos que motivaron el inicio de la investigación.

El 16 de julio de 2007, el licenciado Gaetán Mejías le envió una extensa comunicación al Juez Presidente del Tribunal Supremo, con copia a todos los Jueces Asociados, en la cual objetaba la evaluación negativa de que fue objeto por la Comisión de Evaluación Judicial y solicitaba su reconsideración. Se anejó a dicha carta copia de sesenta cartas, firmadas por sesenta y seis abogados, que recomendaban su gestión judicial.

Indicó que declinaba comparecer ante la Comisión de Evaluación por segunda ocasión conforme se le había ofrecido, por no "inspirarnos dicha Comisión ninguna confianza al darle credibilidad a meros comentarios y alegaciones, que en ningún Tribunal hubieran sido admitidas". Sostuvo que la Comisión de Evaluación Judicial, "en nuestro caso particular, no ha actuado en forma justa, imparcial y diligente que requiere su delicada encomienda". Que la Comisión "en forma totalmente contraria a su estatuto orgánico nos ha negado el derecho a examinar los formularios que dan base a su aberrada evaluación…". Además, apuntó que la Comisión llevó a cabo una evaluación "réproba" y "desastrosa", y que las conclusiones a las que llegó son "totalmente sesgadas

(biased) que no recogen en su contenido estocástico (aleatorio) la función judicial que hemos realizado".

Indicó, que la reconsideración que solicitaba del Tribunal Supremo "requiere que sea realizada sin tomar en consideración el hecho de que el Juez que preside la Comisión lleva muchos años en ese Alto Foro, así como tampoco el *esprit du corp* que permea toda institución".

Aclaró que "no le deslumbran las candilejas ni las frivolidades, como el aparecer en la Internet en el Cuadro de Honor de Jueces Excelentes, en una foto oficial ni en algún certificado de reconocimiento". Y finalmente, luego de expresar su tristeza y desasosiego por la evaluación recibida, apuntó que si tuviese que abandonar la Rama Judicial lo haría "con la frente en alto, con la satisfacción del deber excelentemente cumplido y, sobre todo, con el mal sabor de que los llamados por autonomasia a impartir justicia, y teniendo la oportunidad de hacerlo, no lo hicieron con uno de sus pares".

Posteriormente, en agosto del mismo año, el licenciado Gaetán Mejías le envió una nueva comunicación al Juez Presidente en la cual indicaba que había sido notificado de la querella iniciada en su contra por la OAT y solicitaba su desestimación. La comunicación aducía que el Canon 29 de Ética Judicial violaba el principio de legalidad pues no establecía penalidad alguna por su incumplimiento, además adolecía de vaguedad al prohibir gestiones "indebidas" sin establecer con claridad qué era lo indebido. Además, sostuvo que los Cánones de Ética Judicial de 2005 violaban

la igual protección de las leyes pues no aplicaban a los miembros del Tribunal Supremo lo que constituía "una clasificación sospechosa de discrimen por condición social". Posteriormente, este Tribunal declaró no ha lugar la solicitud de desestimación de la querella.[3]

Así las cosas y como parte de la investigación que llevaba a cabo la OAT, sus investigadores tomaron un sinnúmero de declaraciones juradas a distintos abogados que habían suscrito cartas para recomendar al querellado. De estas declaraciones juradas surge que las cartas de recomendación fueron remitidas tanto en fechas anteriores y posteriores a la comunicación que el querellado recibiera de parte de la Directora Administrativa de la OAT solicitándole que desistiera de dicha práctica. Algunos de los que suscribieron cartas de recomendación lo hicieron luego de que el querellado les llamara personalmente o los visitara en sus oficinas privadas para solicitarles el envío de las cartas; otros, recibieron por correo o facsímil la comunicación por escrito del querellado y accedieron a enviar la recomendación solicitada. Algunos

---

[3] En septiembre de 2007, la entonces subsecretaria del Departamento de Justicia le remitió a la Directora Administrativa de la OAT una comunicación en la cual le refería una carta del juez Gaetán Mejías que había sido recibida por el Secretario de Justicia, Hon. Roberto José Sánchez Ramos con fecha de 31 de agosto de 2007. En la referida carta el juez Gaetán Mejías le informaba al Secretario que su nombramiento vencía el 17 de diciembre de 2007 y le agradecía a los abogados y fiscales del Departamento que habían postulado ante él. A la comunicación enviada le anejó copia de cuarenta y siete cartas de abogados que habían postulado ante él y le habían remitido al Sr. Hugo Díaz sendas cartas de recomendación.

abogados, sin embargo, se enteraron del proceso de renominación por compañeros abogados y decidieron suscribir sus cartas de recomendación. Todos indicaron que le entregaron copia de la carta de recomendación que enviaron al querellado, algunos personalmente y otros las remitieron por correo. Los abogados entrevistados aseguraron que era la primera vez que recibían una comunicación o solicitud de tal la naturaleza.[4]

El 13 de noviembre de 2008 la OAT emitió su informe de investigación. En el referido informe se concluyó que las actuaciones del licenciado Gaetán Mejías vulneraron el Canon 29 de Ética Judicial así como los Cánones 9 y 38 de Ética Profesional. El informe recomendó que se refiriera el asunto a la Comisión de Disciplina Judicial para la correspondiente querella.

Recibido el informe de investigación, la Comisión de Disciplina determinó causa y dispuso para que se presentara la querella correspondiente. El 16 de enero de 2009 este Tribunal designó a la licenciada Crisanta González Seda como Comisionada Especial para que recibiera la prueba en este caso y emitiera, a su vez, un informe. Posteriormente, referimos la querella a la Oficina del Procurador General para que compareciera como parte

---

[4] Varios de los abogados que enviaron una carta de recomendación recibieron una carta de agradecimiento del licenciado Gaetán Mejías en la cual éste les agradecía el envío de la carta indicando: "Estamos profundamente agradecidos por su noble gesto de cortesía y, sobre todo, por coadyuvar (sic) **en tratar de evitar que se cometa una injusticia más, de las muchas que se cometen a diario por personas que no tienen conciencia del daño emocional que acarrean a los afectados."** (Énfasis nuestro.)

querellante en los procedimientos que se habrían de iniciar conforme se dispone en la Regla 14 del Reglamento del Tribunal Supremo.

El 13 de marzo de 2009 el licenciado Gaetán Mejías compareció y contestó la querella presentada. En su contestación, el querellado solicitó la desestimación de la querella por considerar que la conducta que se le imputaba ocurrió mientras él se desempeñaba como juez y los Cánones de Ética Profesional rigen la conducta de los abogados pero no de los jueces en funciones. Además, sostuvo que las cartas que él envió no pueden catalogarse como contrarias a los Cánones 9 y 38 de Ética Profesional. Adujo también que no procedía concluir que había incumplido el Canon 29 de Ética Judicial pues al momento de emitirse el informe de investigación ya él no fungía como juez y, aun asumiendo para propósitos de argumentación que el contenido de las cartas fuese contrario a los cánones que se le imputaban, ya él había sido sancionado pues al extendérsele un nombramiento de receso en diciembre de 2007, fue asignado a la Región Judicial de Humacao.

Luego de varios incidentes procesales el caso quedó sometido --por el expediente-- para resolución por la Comisionada Especial. El 17 de diciembre de 2009 ésta emitió su informe el cual nos remitió. En éste concluyó que la conducta del licenciado Gaetán Mejías estaba reñida con el Canon 29 de Ética Judicial por lo que se configuró una violación de los Cánones 9 y 38 de Ética Profesional. El licenciado Gaetán Mejías no ha replicado al informe de

la Comisionada como tampoco ha solicitado término para ello. En vista de ello, el asunto quedó sometido ante nuestra consideración para su resolución, por lo que pasamos a atenderlo.

## II

Como asunto de umbral tenemos que expresarnos en torno al argumento dual del querellado de que no tenemos jurisdicción para sancionarle, bien porque los Cánones de Ética no le aplican a los jueces en funciones, o bien porque la conducta imputada acaeció mientras él era juez y, toda vez que ya no se desempeña como tal, no cabe encontrarlo incurso en una violación a los Cánones de Ética Judicial.

Como sabemos, la jurisdicción disciplinaria del Tribunal Supremo sobre los jueces del Tribunal de Primera Instancia, como del Tribunal de Apelaciones, emana del Art. V, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico. Precisamente, a tenor con ese mandato constitucional aprobamos los Cánones de Ética Judicial de 2005 donde se establecen las normas mínimas de conducta exigibles a los miembros de la judicatura. 4 L.P.R.A. Ap. IV-B. *Véase* además, *In re Cruz Aponte*, 159 D.P.R. 170 (2003).

Las Reglas de Disciplina Judicial, 4 L.P.R.A. Ap. XV-B, por su parte, delinean el esquema procesal que se utiliza para tramitar los asuntos disciplinarios instados contra miembros de la judicatura. Así, la Regla 33(a), sobre el efecto de la renuncia o expiración del término de

nombramiento, dispone claramente que: "La renuncia o la expiración de nombramiento de la jueza o del juez querellado no impedirá que continúe el procedimiento disciplinario en su contra al amparo de este reglamento. La comisión determinará si la conducta amerita la recomendación de imponerle a la juez o al juez querellado medidas disciplinarias por violación al Código de Ética Profesional."

Los argumentos esgrimidos por el querellado ya han sido resueltos por este Tribunal en contra de la posición que éste esgrima. Hace ya casi cincuenta años decidimos que la "conducta impropia … observada por un juez puede dar lugar a su desaforo o suspensión como abogado, aun cuando hubiese cesado como magistrado." *In re Liceaga*, 82 D.P.R. 252, 257 (1961). Años más tarde, en *In re Campoamor Redín*, 150 D.P.R. 138, 149 (2000), aclaramos que a tenor con nuestro poder inherente para disciplinar y destituir jueces, "el cese en el desempeño de las funciones como juez, ya sea por motivo de renuncia, por la no renominación o por la separación del cargo, no es óbice para que continúe el procedimiento disciplinario, si la naturaleza de la conducta imputada puede dar lugar al desaforo, a la suspensión de la abogacía o a otras medidas disciplinarias". Y en *In re Suárez Marchán*, 159 D.P.R. 724, 735 (2003) señalamos que el cese en funciones de un juez, no "es óbice para que ejerzamos nuestro poder inherente para disciplinar[le] en caso de que su conducta como juez haya infringido los Cánones de Ética Judicial, y

que esas actuaciones también violen los cánones del Código de Ética Profesional".

Vemos entonces que, ya bien por virtud de nuestro poder inherente para disciplinar a los jueces o bien por lo dispuesto expresamente en la Regla 33(a) de las de Disciplina Judicial, el hecho de que un juez no ostente su cargo no es obstáculo para que pasemos juicio sobre sus actuaciones mientras fungía como tal y concluyamos, cuando los hechos lo ameriten, que se ha incurrido en conducta que contraviene los Cánones de Ética Profesional. Y es que así debe ser. De lo contrario, quedaría inerme la defensa adecuada de la justicia pues una querella podría tornarse académica ante el cese en funciones del juez. Además, sería igualmente contrario e "incompatible con nuestra facultad inherente para reglamentar el ejercicio de la abogacía". *In re Scherrer Caillet-Bois*, 162 D.P.R. 842, 859 (2004).

Despejado el planteamiento de umbral, pasamos a evaluar el estado de derecho vigente respecto a los cargos que se le imputaron al licenciado Gaetán Mejías.

III

Todo abogado "tiene un deber ineludible de proteger y fortalecer la independencia judicial." S. Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, Publicaciones JTS, San Juan, 2010, pág. 312. En su multiplicidad de facetas, la independencia judicial es presupuesto indispensable para nuestra vida en democracia.

Este valor sirve de telón de fondo al impartirle contenido ético al Canon 9 de Ética Profesional. *Íbid.*

El Canon 9 de Ética Profesional dispone, en lo pertinente, que todo abogado "debe observar para con los tribunales una conducta que se caracterice por el mayor respeto. Ello incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden de la administración de la justicia en los tribunales."

En el pasado hemos expresado que "el abogado no tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces. En este sentido, el recurrir constantemente al "apuntamiento de que el tribunal actuó 'con perjuicio, pasión y parcialidad', sin sustanciarlo o sin motivos fundados para así creerlo, es un comportamiento censurable que [se debe] rechazar." *In re Cardona Álvarez*, 116 D.P.R. 895, 906-07 (1986). Es contrario a la buena práctica de la profesión que un abogado haga serias imputaciones sobre el obrar de un juez cuando dichas imputaciones no están sostenidas con evidencia contundente e indubitada. *In re Crespo Enríquez*, 147 D.P.R. 656 (1999).

El Canon 9 exige, por un lado, respetar las órdenes y directrices emitidas por los jueces; y por otro, le impone a todo abogado "el deber de respetar a jueces, empleados y funcionarios del tribunal, tanto en comparecencias formales, personales o por escrito, como cuando interactúa informalmente con éstos (respeto de carácter cívico)."

Steidel Figueroa, *loc. cit.*    Hoy nos ocupa esta segunda vertiente.

Cuando evaluamos las expresiones de un abogado bajo el crisol del Canon 9, debemos distinguir, como correctamente señala el juez Steidel Figueroa en su obra, "entre expresiones con contenido ético y disciplinariamente objetables y expresiones cuyo carácter objetable reside en la forma en que se formulan, independientemente de su contenido." Steidel Figueroa, *op. cit.,* pág. 315. Son expresiones objetables por su contenido aquellas "que están asociadas a imputaciones falsas y no fundamentadas contra jueces u otros funcionarios del tribunal, como acusar sin motivos fundados a un juez de que ha actuado 'con prejuicio, pasión y parcialidad'." *Íbid. Véase, In re Cardona Álvarez,* 116 D.P.R. 895, 907 (1986).

No hay duda que siempre cabe una crítica razonada y razonable a las determinaciones judiciales.  Tan es así, que hemos considerado que la crítica judicial sana y oportuna se revela indispensable para la buena marcha judicial pues mantiene a los jueces "alertas y atentos al estricto cumplimiento de sus funciones". *In re Andreu Ribas*, 81 D.P.R. 90, 120 (1959).  Además, y como hemos indicado en el pasado, no se puede sostener que los Cánones de Ética Profesional puedan considerarse como fuente de censura a los abogados. *In re Rodríguez Rivera*, 170 D.P.R. 863 (2007).  Antes bien, debemos recalcar que el hecho de que un abogado defienda apasionada y diligentemente la causa de su cliente no es incompatible con la exigencia de

que cuando lo haga, sea de una forma decorosa y respetuosa. No hay nada que propenda más a destruir el justo balance de la conciencia judicial y a deteriorar y obstaculizar la imparcialidad y el recto y libre curso de la justicia, que una crítica falsa, injustificada y viciosa. *Véase*, *In re Andréu Ribas, supra*.

Para guiarnos en la delicada faena de examinar y ponderar la conducta de un abogado bajo el prisma del Canon 9, hemos elaborado ciertos criterios que nos guían en este cometido. Son éstos: primero, si aunque equivocado, el abogado creía en la validez de la imputación hecha al juez; segundo, si aun cuando los hechos no eran ciertos, tenía motivos fundados o causa probable para creer en su veracidad; y tercero, si la imputación no fue hecha maliciosamente con el propósito deliberado de denigrar al tribunal. *Véanse*, *In re Crespo Enríquez*, 147 D.P.R. 656 (1999), *In re Cardona Álvarez*, 116 D.P.R. 895 (1986), *In re Martínez Jr.*, 108 D.P.R. 158 (1978), *In re Andréu Ribas, supra*. Cuando las expresiones que evaluamos minan, o tienden a minar, la independencia judicial como valor que subyace el Canon 9, debemos evaluarlas con particular rigor. Es a la luz de estos principios que deberíamos considerar las actuaciones del ex juez Gaetán Mejías.

Ello no obstante, la mayoría rehúsa considerar las expresiones del ex juez Gaetán bajo el Canon 9 de Ética Profesional. La mayoría considera que este precepto ético sólo limita la conducta del abogado que litiga en los tribunales, por lo que concluye que el "deber impuesto es

exclusivo a los abogados." Específicamente, la mayoría sostiene que "este precepto está dirigido a regular la conducta del abogado litigante en corte." Y, como este caso versa sobre las expresiones de un juez, se impone la conclusión de que no aplica el canon al querellado.

La mayoría encuentra apoyo para su conclusión en nuestras expresiones en *In re Busó Aboy*, 166 D.P.R. 49 (2005); *In re Saavedra Serrano*, 165 D.P.R. 817 (2005), donde, en efecto, hicimos un señalamiento concluyente y sin elaborar, como lo expresado por la mayoría. Lo cierto es que en ninguno de esos casos evaluábamos las expresiones de un juez cuestionando la honradez de otro juez; por el contrario, las expresiones objetables las había expresado un abogado. Los hechos que nos conciernen hoy son claramente distinguibles de lo ocurrido en estos casos por lo que, en correcta técnica adjudicativa, nada de lo dispuesto en *In re Busó Aboy*, *ante,* o en *In re Saavedra Serrano*, *ante*, nos impide que evaluemos si las expresiones del ex juez Gaetán Mejías en contra del Juez Asociado señor Rebollo López, constituyen una violación al Canon 9. Ninguno de estos casos visualizaba un escenario en donde un abogado-juez lanzaría un ataque contra otro juez de tal intensidad que lacera la integridad de los tribunales. Además, y tal vez más importante, en estos casos no consideramos las responsabilidad del abogado como funcionario al servicio de la Justicia, de actuar de forma tal que proteja y salvaguarde la independencia judicial. Para resumir, aplicar fuera de contexto nuestras

expresiones en los casos antes mencionados, como hace la mayoría, obstaculiza un análisis necesario sobre la interacción del Canon 9 con los hechos como los de este caso.

Por otro lado, el Canon 38 de Ética Profesional dispone que: "El abogado deberá esforzarse al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia."

Este Canon extiende la obligación de los abogados de conducirse en forma digna y honrada, a su vida privada. *In re Quiñones Ayala*, 165 D.P.R. 138 (2005). En ese sentido, "[c]ada abogado es un espejo en que se refleja la imagen de la profesión, éstos deben actuar con el más escrupuloso sentido de responsabilidad que impone la función social que ejercen". *Íbid,* pág. 145. Por ello, el "abogado habrá de desempeñarse con dignidad y alto sentido del honor, aunque eso implique ciertos sacrificios personales". *Íbid.*

Finalmente, debemos enmarcar la conducta del licenciado Gaetán Mejías con la que se espera de cualquier magistrado en nuestra sociedad. Para ello, debemos considerar lo dispuesto en los Cánones de Ética Judicial de 2005, ya que aquí se encuentran las normas mínimas de conducta exigibles a los miembros de la judicatura

puertorriqueña. Uno de los principios rectores de estos cánones es procurar que los jueces aporten siempre a la exaltación de nuestra judicatura evitando trastocar o mancillar el prestigio de la Rama Judicial. De esta forma se estimula el respeto y la confianza en la judicatura. Ya hemos señalado que debido a la naturaleza de las funciones del juez, se le exige una conducta ejemplar en todo momento, dentro y fuera del tribunal. *Véase*, *In re Claverol,* res. 7 de enero de 2009, 175 D.P.R. ___, 2009 T.S.P.R. 1. Se espera que los jueces sean ejemplo de sobriedad, respeto y urbanidad, incluso frente a personas irrespetuosas y éstos deben evitar, en todo momento, cualquier ejercicio inapropiado de su autoridad.

Por su parte, el Canon 29 de Ética Judicial establece que "[l]as juezas y los jueces se abstendrán de realizar gestiones indebidas para lograr ascensos o para obtener una renominación en la judicatura. También se abstendrán de realizar gestiones indebidas para obtener cualquier otro cargo público." Esta prohibición incluye todo tipo de gestión indebida tanto para beneficio del juez como de terceras personas, pero excluye los trámites oficiales ante los organismos que tienen tangencia en el proceso de nombramientos judiciales.

Con estos principios en mente, pasemos a evaluar la controversia traída a nuestra consideración.

IV

Los hechos en este caso nos invitan a reflexionar en torno a la figura del juez y su rol en nuestra sociedad y

sobre la conducta que de éste esperamos. En esta faena tenemos, por necesidad, que partir de la premisa que la independencia judicial es crítica para mantener el estado de derecho. Un Poder Judicial independiente proporciona equilibrio en el desempeño de los poderes públicos, al revisar la autoridad de los otros poderes del Estado para evitar la acción arbitraria del gobierno. Concomitante natural a la independencia judicial es, naturalmente, el ejercicio responsable del Poder Judicial. Es decir, esa independencia para hacer cumplir la ley debe estar templada con el más alto grado de imparcialidad e integridad.

Juzgar es más que un trabajo, es una forma de vida. Cada juez debe desempeñarse con integridad, humildad, mesura y entereza de carácter, al igual que con un alto sentido de la relevancia social del cargo que ostenta. Como hemos dicho antes, existen unas profesiones que no admiten término medio y ésta es una de ellas. *In re Nervárez Zavala*, 123 D.P.R. 511, 524 (1989). Así, la función judicial requiere que "el juez conserve la rectitud de su conducta dentro y fuera del tribunal", pues es de esta forma que mejor se salvaguarda la confianza pública depositada en su persona. *In re Cruz Aponte*, 159 D.P.R. 170, 186 (2003). Los jueces y los abogados comparten la responsabilidad "de preservar la dignidad de los procedimientos judiciales mediante la observación de normas de urbanidad y respeto mutuo que propendan a evitar cualquier lesión a la solemnidad que requiere la administración de la justicia". *Íbid.*

Los jueces no deben ejercer inapropiadamente la autoridad que la Constitución y las leyes les confiere y deben evitar cualquier actuación que suponga una influencia indebida en el ánimo de cualquier funcionario público, o del ciudadano que adviene en contacto con su persona. Los magistrados son los depositarios de la confianza del ciudadano en la administración de la justicia, por lo que sobre sus hombros recae la responsabilidad de no defraudar o faltar a esa confianza depositada. Esta confianza, a su vez, es presupuesto indispensable para la estabilidad y supervivencia del estado de derecho. Esta confianza no es sólo el producto de un desempeño judicial que refleje aquello que prescribe el Derecho sino también, es reflejo "de la conducta ejemplar de los jueces en su vida privada". S. Steidel, *La regulación de las actividades extrajudiciales de los jueces en Puerto Rico y en Estados Unidos*, Suprema Corte de Justicia de la Nación, Serie Ética Judicial, México, 2006, pág. 14. Aaron Barak ha apuntado correctamente: "An essential condition for realizing the judicial role is public confidence in the judge. This means confidence in judicial independence, fairness, and impartiality. It means public confidence in the ethical standards of the judge. It means public confidence that judges are not interested parties to the legal struggle and that they are not fighting for their own power but to protect the constitution and democracy." A. Barak, *The Judge in a Democracy*, Princeton University Press, 2006, pág. 109.

El prestigio del juez y de la institución que representa no debe utilizarse para gestionar privilegios o concesiones que de otro modo no se hubieran obtenido. La estimación en el cargo y la reputación bien ganada, sólo pueden ser carta de presentación en el ejercicio de las funciones judiciales. De ahí la importancia de la prudencia en el manejo de asuntos ajenos a la función judicial para evitar así la apariencia de que se utiliza la respetabilidad del puesto que se ostenta como instrumento de intimidación o para que se le favorezca en lo que son reclamos personales. *Véase*, *In re Scherer Caillet-Bois, supra*. En el ámbito de la ética judicial, la prudencia es el valor orientado al autocontrol del poder de decisión de los jueces y al cabal cumplimiento con su función jurisdiccional. El juez prudente es aquél "que procura que sus comportamientos, actitudes y decisiones sean el resultado de un juicio justificado racionalmente, luego de haber meditado y valorado argumentos y contraargumentos disponibles…" *Código Modelo Iberoamericano de Ética Judicial*, Art. 69. El juicio prudente exige del juez capacidad de comprensión y esfuerzo por ser objetivo. Ya lo advertía Aristóteles: "El rasgo distintivo del hombre prudente es el ser capaz de deliberar y de juzgar de una manera conveniente sobre las cosas."

V

Al analizar detenidamente los hechos que dieron base a esta querella debemos concluir, al igual que la Comisionada Especial, que las actuaciones del querellado se apartaron

del mandato contenido en el Canon 29 de Ética Judicial y ello, como señaló la Comisionada Especial en su informe, "tiene implicaciones que trascienden las responsabilidades del querellado, como juez, y se proyectan en su carácter personal y su vida profesional como abogado", por lo que se configuraron también violaciones a los Cánones 9 y 38 de Ética Profesional.

A

La carta enviada por el querellado a un sinnúmero de abogados con el propósito de que éstos, a su vez, enviasen cartas al Director de la Oficina de Nombramientos Judiciales en La Fortaleza, recomendándole para su renominación o para un ascenso y que le remitiesen copia de la carta enviada, no es, ni puede ser, una gestión legítima en el proceso de realizar una solicitud formal para tal renominación o ascenso. Como tampoco es o puede considerarse parte de los trámites necesarios ante los organismos que asesoran al Poder Ejecutivo o el Legislativo en dicha gestión. No hay duda que, como poco, esta actuación es éticamente imprudente y "viola el espíritu de principios rectores de los Cánones de Ética Judicial", tal y como concluye la Comisionada Especial en su informe.

La carta en cuestión, como vimos, se redactó en un papel timbrado en cuyo encabezamiento aparecía el nombre del querellado y se le identificaba como "Juez Superior". Le solicitaba a los abogados, con carácter de **urgencia**, que redactaran una carta solamente si consideraban que el querellado **se desempeñaba adecuadamente en la función**

**judicial**, y que remitida la carta, le enviasen copia de ésta para **su récord**. Esta petición sin precedente crea la apariencia de que se utiliza el poder del cargo que se ostenta para beneficio propio, lo que mina la confianza en nuestra judicatura. No podemos perder de vista que algunas de las peticiones las hizo el querellado **directamente** al llamar por teléfono varios abogados o al visitarlos personalmente a sus oficinas. Lo que redunda en una presión mayor sobre quienes recibieron la petición directamente.

El querellado se colocó a sí mismo, al igual que a la judicatura en general, en una posición insostenible, donde su imparcialidad podía, razonablemente, ser cuestionada. La carta que envió a abogados que postulaban ante él daba la impresión de que el abogado que no enviase una carta de recomendación no consideraba que él, en su calidad de juez, se desempeñaba de forma adecuada. No es irrazonable pensar que el abogado que recibiera esta solicitud considerara que de no enviar la carta solicitada se podían perjudicar los asuntos que tuviese ante la consideración del juez. La sombra de sospecha que esta actuación arroja sobre la función judicial es funesta. Esta conducta del querellado no es cónsona con aquella que esperamos del juez ideal en nuestra sociedad. Del juez que nos inspira confianza, certidumbre, entereza, neutralidad e imparcialidad, fidelidad a la ley, esperanza y admiración. Su proceder está claramente reñido no sólo con el texto claro del Canon 29 de Ética Judicial, sino con la esencia misma que

fundamenta el Código de Ética Judicial. Su conducta hubiese dado base suficiente para separarle del cargo de juez si éste lo estuviese ejerciendo. Aun cuando no procede sancionarle por la violación bajo el Código de Ética Judicial, ello no es óbice para considerar si sus acciones son contrarias a los cánones de Ética Profesional.

B

En la carta el querellado hace expresiones ofensivas hacia su proceso de evaluación y arroja dudas sobre la integridad y honestidad de los miembros de la Comisión de Evaluación. Ello, al referirse a la evaluación llevada a cabo por la Comisión como un acto de maldad e injusticia, que es una infamia y un atropello y que es producto de una agenda en su contra de algún "enemigo invisible que lo persigue desde Arecibo y que hasta ahora ha logrado que no sean justos" con él. Indica, falsamente, que le negaron acceso a los formularios de evaluación que envían los abogados y fiscales consultados en todo proceso de evaluación por la Comisión, lo que constituye un atropello a su dignidad como ser humano.

Estas imputaciones las repite en la carta que le dirigiera al Juez Presidente objetando el informe emitido por la Comisión y atacando duramente a sus miembros y a su Presidente, el entonces Juez Asociado señor Rebollo López. Indicó que éstos fueron insensibles y desconsiderados, que llevaron a cabo la evaluación de forma precipitada y tratándolo como "una cosa u objeto". Calificó el trato recibido como "en forma abyecta ya a base de anonimatos de

personas interesadas en hacerle daño" y que las conclusiones del informe estaban "sesgadas". En la carta enviada al Juez Presidente el 16 de julio de 2007, no hay evidencia de que el querellado tuviera motivos fundados, más allá de sus alegaciones, para cuestionar la honradez e integridad de los miembros de la Comisión. Lo cierto es, como se indicó, que la Comisión le ofreció una oportunidad al querellado para que compareciera nuevamente ante ésta y expresara su inconformidad y aportara los fundamentos necesarios para demostrar la incorrección del informe rendido. Éste, no obstante, rechazó esta oportunidad bajo el fundamento de que no "confiaba" en la Comisión.

Cabe destacar que la Comisión de Evaluación Judicial es un organismo de la Rama Judicial creado por ley y presidido por un miembro del Tribunal Supremo. Está compuesto además por jueces, abogados en la práctica privada y ciudadanos no abogados. Sus orígenes datan de 1988 cuando este Tribunal creó un sistema interno de evaluación al cual, posteriormente, la Asamblea Legislativa le impartió carácter de ley. Véase, Ley núm. 91 de 5 de diciembre de 1991, según enmendada, 4 L.P.R.A. secs. 71-74.

La Comisión es el organismo interno de la Rama Judicial para la evaluación del desempeño de los jueces. Sus resultados se utilizan internamente por la rama para beneficio de sus miembros pero además, por disposición de ley, se comparten con la Rama Ejecutiva y Legislativa cuando éstas se encuentran en el proceso de atender

peticiones de renominación o ascenso de jueces.  4 L.P.R.A. secs. 73j y 73l.[5]

Como todo sistema de evaluación del desempeño, el proceso diseñado por la Comisión está dirigido a establecer un mecanismo sistemático, periódico y objetivo de estimación cualitativa y cuantitativa de la labor y eficacia del trabajo de los jueces.  Su propósito no es sólo mejorar la calidad de la justicia impartida en los tribunales del Estado Libre Asociado de Puerto Rico, lo que de suyo sería suficiente para valorar su trabajo.  Hay que destacar también, que los mecanismos de evaluación del desempeño implantados a través de la Comisión constituyen parte del entramado amplio de medidas cuyo diseño persigue fortalecer la independencia judicial.  Al procurar el correcto desempeño de los jueces mediante la evaluación objetiva de sus ejecutorias, se busca evitar que incurran en excesos, los cuales, como sabemos, afectan desfavorablemente la imagen del sistema judicial.

Por otro lado, la transparencia e imparcialidad del sistema establecido garantiza que las evaluaciones se lleven a cabo al margen de cualquier criterio disonante, no jurídico y exógeno a la equilibrada impartición de la justicia.  Es en este contexto que debemos justipreciar la labor que lleva a cabo la Comisión, evitando intentos de

---

[5]La Comisión de Evaluación Judicial realiza, fundamentalmente, dos tipos de evaluaciones, a saber: las evaluaciones periódicas detalladas provistas en ley sobre el desempeño judicial del juez, y aquellas evaluaciones motivadas por solicitudes de ascenso o renominación. Véase, 4 L.P.R.A. secs. 73j y 73l.

mancillarla o desvirtuar lo que ha sido hasta hoy su función. Véanse, entre otros: S.D. O'Connor, Judicial Accountability Must Safeguard, Not Threaten, Judicial Independence: An Introduction, 66 *Denv. L. Rev.* 1, 2 (2008); B. Fein & B. Neuborne, Why Should We Care About Independent and Accountable Judges, 84 *Judicature* 58, 59 (2000); D. Brody, The use of Judicial Performance Evaluation to Enhance Judicial Accountability, Judicial Independence, and Public Trust, 86 *Denv. U. L. Rev.* 115, 119 (2008); S. Anderson, Judicial Retention Evaluation Programs, 34 *Loy. L.A. L. Rev.* 1375, 1380 (2001); R. Kourliz & J. Singer, Using Judicial Performance Evaluaitons to Promote Judicial Accountability, 90 *Judicature* 200, 201 (2007).

Como se observa, el trabajo que desempeña la Comisión es por demás valioso; es garantía de eficiencia, calidad e imparcialidad del servicio público de la justicia. Por un lado, provee información objetiva y esencial sobre los jueces que van a ser renominados o ascendidos, a los poderes públicos encargados de sus renominaciones o ascensos. Además, es un vehículo vital de retroalimentación sobre el desempeño profesional de los miembros de la judicatura. R. Kourlis, J. Singer, op. cit., pág. 203 ("Judges themselves stand to benefit from the formal feedback of an evaluation. Each evaluated judge receives concrete information about the strengths and weakness of his or her performance, creating individualized opportunities for professional self-improvement.") Todo

ello, como dijimos previamente, constituye un mecanismo más de fortalecimiento del sistema judicial de nuestro país.

Por todo lo anterior, no nos parece legítimo cuestionar, sin ápice de prueba para ello, la integridad e imparcialidad de los miembros de la Comisión.  Como mínimo, las expresiones del licenciado Gaetán Mejías socavan las relaciones cordiales y el ambiente de civismo y profesionalismo que debe prevalecer en todo procedimiento judicial.  Pero más grave aún, su actuación mina la confianza en uno de los  organismos del sistema judicial cuyo fin es promover y garantizar la independencia judicial.[6]  Sobre este particular la Juez Asociada O'Connor

---

[6] El profesor Brody en su artículo sobre los mecanismos de evaluación del desempeño judicial nos dice específicamente:

> An important component of public trust in governmental institutions is the citizenry's ability to hold its officers accountable.  A governmental institution that is viewed as unaccountable is likely to lack public trust.  On the other hand, as public accountability increases, the trust afforded the institution is likely as well.

> Beyond increasing perceived legitimacy, the public's ability to effectively hold judges accountable … a 'reservoir of loyalty' upon which the judiciary can draw.  This reservoir grows as the public´s trust in the courts and judiciary operate effectively in a transparent manner.  After time, this reservoir can be drawn upon by judges to foster the acceptance and understanding of politically unpopular decisions that courts are required to make.  Such public acceptance in turn serves to increase judicial independence and the ability to make difficult decisions without concern for political ramifications.

D. Brody, The use of Judicial Performance Evaluation to Enhance Judicial Accountability, Judicial Independence, and Public Trust, 86 *Denv. U. L. Rev.* 115, 125-126 (2008).

ha indicado con gran atino, lo siguiente, citamos extensamente:

> Judicial independence has both individual and institutional aspects. As for individual judges, there are at least two avenues for securing that independence: First, judges must be protected from the threat of reprisals, so that fear does not direct their decision-making. Second, **the method by which judges are selected, and the ethical principles imposed upon them, must be constructed so as to minimize the risk of corruption and outside influence.** The first endeavor is to protect judicial independence from outside threats. **The second is to ensure that judicial authority is not abuse, and it is the core concern of the enterprise of judicial accountability.** … True judicial accountability advances judicial independence and the paramount Rule of Law. 'Accountability and independence are two sides of the same coin: accountability ensures that judges perform their constitutional role, and judicial independence protects judges from the pressures that would pull them out of that role'. … A third value may be advanced through judicial accountability properly construed: **judicial competence. A fundamental value of the Rule of Law is that judicial decisions are not made arbitrarily, but through a process of reasoned decision making. The Rule of Law therefore requires that 'official decisions be justified in law, and therefore be reasoned and nonarbitrary with respect to general legal standards'.**" (Énfasis nuestro.)

S. D. O'Connor, *op. cit.,* págs. 2-4.

Como se detalló anteriormente, el ex juez Gaetán Mejías hizo serias imputaciones, de forma reiterada, en contra del ex Juez Asociado señor Rebollo López en las que cuestionó, sin base, su integridad y honestidad. Las expresiones iban dirigidas a impugnar las actuaciones del Juez Asociado señor Rebollo López mientras se desempeñaba como Presidente de la Comisión de Evaluación de Nombramientos Judiciales y evaluaba al entonces juez. La gestión de la Comisión y sus miembros sirve para garantizar

la independencia del Poder Judicial. El cuestionamiento gratuito de la imparcialidad del Juez Asociado señor Rebollo López, y por ende de la Comisión, socava las bases de esa independencia judicial que todo abogado debe resguardar. Y como ya apuntamos, es obligación de quien se desempeña en esta profesión ser protector y promovedor de la independencia judicial; exigencia que encuentra apoyo, ente otros mandatos éticos, en el Canon 9 de Ética Profesional.

De otra parte, **en ninguna etapa de estos procedimientos el querellado ha sustentado ninguna de sus imputaciones, como tampoco ha demostrado que tenía motivos fundados para considerar veraz lo aseverado.**

No actúa de forma digna y honorable, como tampoco con el mayor respeto, ni exalta el honor y la dignidad de su profesión, el abogado que así procede y así se expresa. Como vimos, el Canon 9 de Ética Profesional le impone a los miembros de la clase togada la obligación de observar para con los tribunales y los miembros de la judicatura una conducta que se caracterice por el mayor respeto y, aun cuando se critique válidamente, se haga con mesura y deferencia. También el Canon 38 exige del abogado, entre otras cosas, aportar con su conducta a la mejor administración de la justicia evitando, entre otras cosas, la mera apariencia de conducta impropia. No albergamos duda alguna de que la conducta del licenciado Gaetán Mejías aquí resumida está reñida con estos mandatos éticos. Igualmente, su conducta es contraria al mandato del Canon

29 de Ética Judicial lo que se revela violatorio, a su vez, de los preceptos éticos contenidos en los Cánones de Ética Profesional.

En este caso el querellado **no ha expresado arrepentimiento alguno por el lenguaje utilizado en las comunicaciones antes reseñadas o que su conducta no habrá de repetirse en el futuro**. Todo lo contrario, se ha reiterado en que su conducta pasada y sus expresiones estaban justificadas. Por otro lado, el querellado lleva veintiséis años en la práctica de la profesión y no surge de su expediente personal que haya incurrido anteriormente en conducta reñida con los Cánones de Ética Profesional.

Al imponer una sanción disciplinaria hemos tomado en cuenta un sinnúmero de factores, como por ejemplo: la buena reputación del abogado en la comunidad, el historial previo de éste, si es la primera falta, la aceptación de la falta y su sincero arrepentimiento, si se trata de una conducta aislada, si medió un ánimo de lucro, así como cualesquiera otras consideraciones que surjan de los hechos y que puedan servir como atenuantes o agravantes. *Véanse*, *In re Quiñones Ayala, supra*; *In re Montalvo Guzmán*, 164 D.P.R. 806 (2005).

A la luz de todo lo anterior, y habiendo concluido que el querellado incurrió en las faltas éticas imputadas y que éstas tienden a minar gravemente la confianza de la ciudadanía en la judicatura, consideramos insuficiente que como sanción, nos limitemos a censurar enérgicamente al querellado. Disentimos de este curso de acción. En su

lugar, separaríamos al querellado del ejercicio de la profesión por un término de seis meses.


Anabelle Rodríguez Rodríguez
Juez Asociada